Harry E. ALTMAN, M.D. and David K. Mulliken, M.D., Appellants,

v.

Derek Daniel ALLEN, Appellee.

No. 92–SC–179–DG.

Supreme Court of Kentucky.

Dec. 17, 1992.

As Modified on Denial of Rehearing April 22, 1993.

Lambert, J., concurred and filed an opinion in which Stephens, C.J., and Reynolds and Spain, JJ., joined.

Leibson, J., dissented and filed an opinion and would grant a rehearing.

Donald P. Moloney, II, Sturgill, Turner and Truitt, Lexington, Pamela Todd Robinette, Stratton, May and Hays, Pikeville, for appellants.

William R. Garmer, Savage, Garmer & Elliott, P.S.C., Lexington, J. Scott Preston, Paintsville, for appellee.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which reversed the judgment of the circuit court in which the trial judge refused to strike three jurors for cause who had been former patients of either Dr. Altman or Dr. Mulliken.

The sole question is the propriety of the refusal of the trial judge to strike the three jurors who were former patients of either doctor.

This medical malpractice action was filed in 1987 and alleged negligence in the treatment of Allen in the weeks following his premature birth in 1972. The Court of Appeals reversed the judgment of the circuit court pursuant to a 9–3 jury verdict for the defendant doctors following an 8–day trial in 1990.

Allen, who weighed approximately 3 pounds at birth, was confined to an Isolette because his lungs were underdeveloped, and in order to survive, he needed oxygen therapy. The hospital had no pediatrician on staff and as a result, Drs. Altman and Mulliken, the obstetrician/gynecologists who delivered Allen, attended him during the two months he was hospitalized following birth. The Isolette was not equipped to measure the concentration of oxygen within it; however, it was equipped to divert the excess oxygen into the room if the oxygen concentration in the Isolette exceeded 40 percent. The hospital did not have means available to measure arterial blood gas levels. The hospital settled prior to the beginning of trial.

The basis of the complaint by Allen is that as a result of the improper administration of high concentrations of oxygen, he suffered a condition known as retrolental fibroplasia, which rendered him legally blind.

The Court of Appeals opinion concluded that there was a special bond between obstetricians/gynecologists and their former patients and that the trial judge had abused his discretion in not excusing for cause three prospective jurors who were formerly patients of the doctors.

The jury included five former patients of the doctors, although only three were challenged for cause. Of the three challenged, one juror had been a patient for over 20 years and until the year before the trial, when the physician retired. A second juror had been a patient for twenty-five years. The third juror had been treated by both physicians several years earlier and the care had included delivering her twins 12 years before trial, plus a third child seven years before trial. All three of the prospective jurors indicated on *voir dire* that their prior relationships as patients would not affect their ability to render a fair and impartial verdict or a verdict against these physicians. The trial judge denied the challenges for cause. Two of the challenged former patients were among the nine jurors who rendered a verdict for the physicians and one of the challenged former patients did not vote for the verdict. Of the two former patients who were not challenged, one also voted against her former doctors.

The Court of Appeals determined that the three jurors who were challenged for cause were biased as a matter of law because they were former patients of the doctors. The court reasoned that although none of the jurors were patients of the doctors at the time of trial, the relationship between a woman and her obstetrician/gynecologist was so close as to destroy juror impartiality. This Court granted discretionary review.

■ The trial judge did not commit reversible error or abuse his discretion because he refused to excuse three jurors simply because they were former patients of the doctors.

The Court of Appeals attempted to distinguish the case of *Mackey v. Greenview Hospital, Inc.*, Ky.App., 587 S.W.2d 249 (1979) on the basis that the medical relationship of the jurors with their obstetrician/gynecologist formed such a bond as to render juror bias as a matter of law. *Mackey, supra,* held that it was not reversible error to overrule a challenge for cause when there was no current or continuing professional relationship between the juror and physician involved in the case.

■ A careful review of the record in this case indicates there is no basis for a "presumed bias" theory. There is no foundation to establish a per se exclusion and no proof has been presented to establish bias. During the *voir dire* examination, there was no comprehensive effort to explore or develop the doctor/patient relationships of the three jurors to the extent necessary to determine bias. There is no evidence that the jurors were frequent patients or that they even had a good relationship with the doctors. There were no scientific treatises or other expert testimony introduced to support the theory of obstetrician-patient bonding. Consequently, the trial judge did not abuse his discretion in refusing to excuse the jurors for cause.

Our decision in this case involves a comparison of *Mackey, supra,* and *Davenport v. Ephraim McDowell Memorial Hospital*, Ky.App., 769 S.W.2d 56 (1988). As noted earlier, *Mackey* involves a similar situation where three prospective jurors in a medical malpractice case revealed during *voir dire* that they had prior professional relationships with one or more of the doctors in the case. *Davenport, supra,* is cited for the proposition that where there is a close relationship between a prospective juror and a party, possible bias cannot be ignored, and that where such a relationship is present, there is a presumption of bias that must be recognized regardless of the answers of the prospective juror on *voir dire*. *See also Ward v. Commonwealth*, Ky., 695 S.W.2d 404 (1985).

We believe that *Mackey* represents a more consistent starting point for consideration of this problem. As in *Mackey*, there was no current or continuing professional relationship between any of the jurors or members of their family with either of the doctors in this case. The jurors were carefully examined by counsel and the trial court. All noted their ability to render a fair and impartial verdict on the basis of the evidence. The relationship between the jurors and the physicians was not so substantial as to require a finding that the jurors were biased and unable to afford the plaintiff a fair trial. *Cf. Whitney v. Louisville & Nashville Railroad Co.*, 296 Ky. 381, 177 S.W.2d 139, (1944). The evidence in the record in this case does not support any other conclusion. As indicated earlier, two of the five former patients who actually sat on the jury, voted against their former doctors. We do not preclude the situation in which there is evidence of a bias, but it cannot be presumed on this record.

We do not believe *Ward v. Commonwealth, supra*, or *Davenport, supra*, are applicable in this situation because there is no evidence that a close relationship was established in this case. As noted in *Whitney, supra*, the relationship described is too remote and unsubstantial to have authorized juror disqualification for cause or that there was any abuse of discretion in overruling the challenges for cause.

No court should speculate so as to presume a special bond between a woman and her obstetrician. Similar and equally unwarranted presumptions could be made about psychiatrists, psychologists, clergy and other counsel-type relationships.

It is best to leave such decisions in the hands of the trial judge who must properly exercise discretion. When such discretion is properly exercised, it must be given great weight. Support for such a proposition does not require lengthy citation. The trial judge has always been recognized as the person in the best position to determine whether a prospective juror exhibits bias or partiality which would require exclusion from the panel. *Davidson v. Grigsby*, Ky., 451 S.W.2d 632 (1970).

There is no reason to disturb the discretion of the trial judge.

There is no basis for an automatic presumption of bias on the part of jurors toward a former physician. The law cannot be expanded to such a degree. Convincing evidence must be presented to the trial judge to support such an argument.

The decision of the Court of Appeals is reversed, and the judgment of the trial court is reinstated.

STEPHENS, C.J., and REYNOLDS, SPAIN and WINTERSHEIMER, JJ., concur.

LAMBERT, J., concurs by separate opinion in which STEPHENS, C.J., and REYNOLDS and SPAIN, JJ., join.

LEIBSON, J., dissents by separate opinion.

COMBS, J., not sitting.

LAMBERT, Justice, concurring.

While I have consistently voted to absolutely uphold the right of parties to be tried by a fair and impartial jury, and as such, share much of the concern expressed in Justice Leibson's dissenting opinion, I am unwilling to "presume bias" on the part of every patient or former patient of a physician. It is the purpose of voir dire examination to discover whether a juror's views and opinions may be disqualifying and counsel had a duty to make an appropriate inquiry. In the absence of some voir dire response indicating discomfort, reluctance or reservation about sitting in judgment of the physicians, there was simply no "cause" for exclusion of the jurors.

The real issue here is whether, in the absence of any evidence indicative of disqualification and notwithstanding voir dire responses, the courts of Kentucky should presume bias and disqualify from jury service every patient or former patient of every physician against whom a malpractice claim is brought. I dispute any suggestion that this jury was packed or that this Court is "incredibly naive" and "ignores reality."

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

The Majority Opinion displays the same indifference to obvious bias previously displayed by the Kentucky Court of Appeals in *Mackey v. Greenview Hosp., Inc.*, Ky. App., 587 S.W.2d 249 (1979), which it cites as authority. The same hand that authors the present Opinion concurred in result in the *Mackey* case.

*Mackey* was wrongly decided. It doesn't take a Rhodes Scholar to realize that a jury packed with friendly acquaintances and former patients cannot be regarded as a neutral jury, and should not be tolerated in a just society even if the jurors profess to be unbiased. In *Mackey* the Court of Appeals failed to redress jury selection procedures which were flagrantly unfair, and other misconduct by trial counsel which should never be condoned by an appellate court. But at least *Mackey* was a Court of Appeals' Opinion, not ours.

Now we have decided to reverse a case wherein a panel of the Court of Appeals, unanimous in its opinion, refused to rubber-stamp a jury of former patients whose babies were delivered by these defendants/obstetricians, recognizing such jurors "must be presumed bias." In speaking to the jurors who should have been struck for cause, the Court of Appeals stated:

> "Here, it is significant that not only did all three women have lengthy professional relationships with one or more of the physicians, but also that the physicians were their obstetricians/gynecologists. We cannot ignore the bonds that have formed in such relationships, particularly where a child has been born, nor the often confidential nature of matters discussed. Certainly, the nature of the relationship between a physician and the prospective juror is a paramount consideration.... [W]e are not able to disregard the possible bias in this case and find that the trial court in so doing abused its discretion."

This is not speculation; it is common sense. This progressive decision by the Court of Appeals in this case should be applauded, not rejected. It is a worthy offspring of equally worthy decisions rendered by the Court of Appeals in *Davenport v. Ephraim McDowell Mem. Hosp.*, Ky.App., 769 S.W.2d 56 (1988), and by our Court in *Montgomery v. Commonwealth*, Ky., 819 S.W.2d 713 (1991), two cases which put providing a fair trial above protecting the prerogatives of the trial judge, as we should do now.

In the final analysis, we are confronted here with the trial judge's refusal to excuse jurors whose babies had been successfully delivered by the same doctors now defending themselves against a charge of mistreating someone else's baby. The Majority Opinion suggests that, as long as these jurors *say* that they would not be biased by their previous relationship to their obstetrician, there is no reason to presume otherwise: this is incredibly naive, and ignores reality. The Majority Opinion says that the claimant's counsel should have asked more questions: this would only have provided glowing testimonials about the doctors for their fellow jurors to digest. The Majority Opinion tells us that claimant's counsel should have called in experts to testify about any so-called "special" bond between a woman and the doctor who nurtures her during pregnancy and delivers her baby, that to presume bias in the absence of such testimony is speculation rather than reasonable inference. But the *probability* of bias is overwhelming, and to hold otherwise defies common sense.

No litigant should be required to plead the case for her baby in such circumstances.