Kristen Nicole BOWMAN, By and Through her next friend and Mother, Christina Maria BOWMAN, Appellant,

v.

Michael PERKINS, M.D.; Bernard C. Moses, M.D.; and Bernard C. Moses, M.D., P.S.C. Appellees

No. 2002–SC–0061–DG.

Supreme Court of Kentucky.

March 18, 2004.

As Modified on Denial of Rehearing June 17, 2004.

James D. Decker, Lexington, Counsel for Appellant.

John T. Pruitt, Jr., Travis, Pruitt & Lawless, Heidi Schultz Powers, Travis, Pruitt, Lawless, Powers & Yeast, Somerset, Counsel for Appellee, Michael Perkins, M.D.

John G. Prather, Jr., Law Offices of John G. Prather, Winter Huff, Law Offices of John G. Prather, Somerset, Counsel for Appellees, Bernard C. Moses, M.D. and Bernard C. Moses, M.D., P.S.C.

Opinion of the Court by Justice STUMBO.

The appellant, Kristen Nicole Bowman, by and through her next friend and mother, Christina Maria Bowman, brought a medical malpractice action in the Whitley Circuit Court against the appellees, Dr. Michael Perkins, Dr. Bernard C. Moses, and Bernard C. Moses, M.D., P.S.C. (Dr. Moses' Medical Clinic), alleging, *inter alia,* that the prescription drug Decadron LA was administered to her negligently. At the close of Bowman's case, a verdict was directed in favor of Dr. Moses individually. Following trial, the jury reached a verdict of nine to three in favor of Dr. Perkins and Dr. Moses' Medical Clinic. Thereafter, Bowman appealed the adverse decision to the Court of Appeals, which was affirmed. Bowman then sought discretionary review before this Court, which was granted. This appeal followed.

Three key issues are presented:

I. Whether the appellees herein had antagonistic interests, thereby entitling them to separate peremptory challenges pursuant to CR 47.03;

II. Whether a current, ongoing physician-patient relationship necessitates a presumption of juror bias; and,

III. Did the trial court err in limiting cross-examination of Dr. Perkins.

For the reasons set forth in the remainder of this opinion, we reverse and remand for a new trial.

## I.

■ The first issue is whether the appellees had antagonistic interests under CR 47.03, thereby entitling each to four peremptory challenges. CR 47.03(1) provides that "[i]n civil cases each opposing side shall have three peremptory challenges, but co-parties having antagonistic interests shall have three peremptory challenges each." Part (2) of the rule provides that "[i]f one or two additional jurors are called, the number of peremptory challenges for each side and antagonistic co-party shall be increased by one."

Dr. Moses' Clinic and Dr. Moses himself were collectively granted four peremptory challenges by the trial court. Four peremptory challenges were granted to Dr. Perkins as well. Bowman objected to these peremptory challenges. Bowman's position was that the appellees should only receive four peremptory strikes together. In support of this position, Bowman contended that the appellees shared the same interests. She argued that the appellees defended each other in their respective pretrial memorandums and, also, that there had been no cross-claims. The trial judge did not agree with Bowman's position and stated that he was convinced that there were antagonistic positions present.

■ The Court of Appeals affirmed the trial court and concluded that "there was a sufficient antagonistic interest shown between the [appellees] at the time of jury selection to warrant giving the additional peremptory strikes." In support of its conclusion, the court set forth the following rationale:

We believe that the requirement that the parties be antagonistic does not preclude their being in agreement on some points of proof. This was not a case of identical trial positions. Because [Bowman] sought to show that Dr. Perkins administered Decadron LA as a result of a policy or pattern of giving that medication to children in Dr. Moses' medical office, appellees were placed in opposition to each other. It became necessary for Dr. Moses to disclaim responsibility for the actions taken by Dr. Perkins in the event Dr. Perkins was found to have deviated from the standard of care. If Dr. Moses could show that there was no issue of agency in his relationship with Dr. Perkins, he had no need to establish that Dr. Perkins' actions were within the standard of care. At trial, Dr. Moses plainly attempted to distance himself from the medical decisions of Dr. Perkins by establishing that Dr. Perkins was in charge of his own medical practice and did not take instruction from Dr. Moses.

We agree with the Court of Appeals' decision regarding the trial court's allocation of the peremptory challenges and adopt the preceding rationale. Furthermore, we find no fault in the fact that no cross-claims were filed in this case. Cross-claims, or the absence thereof, are but one factor to be considered, and are "not dispositive of the issue of the existence of antagonistic interests." *Davenport v. Ephraim McDowell Mem'l Hosp., Inc.,* Ky.App., 769 S.W.2d 56, 59 (1988).

The trial judge did not abuse his discretion and the Court of Appeals' decision regarding the peremptory challenges was proper. There was no error.

## II.

At trial, Bowman challenged for cause all jurors who were current patients of the appellees. Specifically, Juror No. 60 stated that he was a current patient of Dr. Moses. Juror No. 7 indicated likewise. Bowman exercised one of her four peremptory challenges as to Juror No. 60. However, Juror No. 7 was not removed, sat on the jury, and consequently was among the nine jurors who rendered a verdict in the appellees' favor.

The Court of Appeals found no reversible error in the trial court's failure to excuse for cause the two aforesaid jurors. Bowman now seeks reversal on this issue. She argues that the trial court should have presumed bias as to those prospective jurors who were current patients of Dr. Moses, thereby requiring their removal for cause. As a result, Bowman contends that she was prejudiced as she would have used a peremptory challenge to remove a prospective juror other than Juror No. 60. We agree.

In *Altman v. Allen*, Ky., 850 S.W.2d 44 (1992), we concluded that there was "no basis for an automatic presumption of bias on the part of jurors toward a former physician." *Id.* at 46. Also, we determined that there was no evidence of a close relationship between the jurors and the defendant physicians. *Id.* at 45–46. The Court of Appeals relied on *Altman* in its decision to affirm the trial court on the present issue. However, such reliance was misplaced because, unlike the jurors in *Altman*, the jurors in question here are current patients of a defendant physician, not former ones.

A trial court enjoys wide discretion in ruling upon challenges of prospective jurors for cause. *Commonwealth, Dep't of Highways v. Devillez*, Ky., 400 S.W.2d 520, 521 (1966). On the other hand, "[t]he prevailing rule is that a juror should be disqualified when the juror has a close relationship with a victim, a party or an attorney, even if the juror claims to be free from bias." *Butts v. Commonwealth*, Ky., 953 S.W.2d 943, 945 (1997). A trial court should presume the possibility of bias of a juror if said juror has "a close relationship, be it familial, financial or situational, with any of the parties, counsel, victims or witnesses," regardless of the answers said juror may give during voir dire. *Ward v. Commonwealth*, Ky., 695 S.W.2d 404, 407 (1985) (quoting *Commonwealth v. Stamm*, 286 Pa.Super. 409, 429 A.2d 4, 7 (1981)). "Once that close relationship is established, without regard to protestations of lack of bias, the court should sustain a challenge for cause and excuse the juror." *Id.*

In our view, a current and ongoing physician-patient relationship is such a close relationship where a trial court should presume the possibility of bias. For that reason, we hold that a prospective juror who is a current patient of a defendant physician in a medical malpractice action should be discharged for cause.

The physician-patient relationship is one that is built on trust and confidence. Just as a person seeks the professional judgment of an attorney in personal legal matters, a person seeks the professional judgment of a physician in matters related to his or her personal health and wellness. In *Jones v. Shea*, 148 Vt. 307, 532 A.2d 571, 573 (1987), the Vermont Supreme Court recognized this trust that a patient places in his or her physician. Additionally, while one may posit that this relationship is not as strong as in years past, "it still has considerable strength." *Marcin v. Kipfer*, 117 Ill.App.3d 1065, 73 Ill.Dec. 510, 454 N.E.2d 370, 372 (1983). We find this to be particularly true of this state's

rural areas where there may only be one or two physicians serving a whole county.

We must bear in mind that "a party charged with a criminal offense is entitled to be tried by a fair and impartial jury composed of members who are disinterested and free from bias and prejudice, actual or implied or reasonably inferred." *Tayloe v. Commonwealth,* Ky., 335 S.W.2d 556, 558 (1960). While Bowman is a civil litigant and not a criminal defendant, she is no less entitled to an impartial jury.

The possibility of empanelling a prejudiced jury is too great if a prospective juror, who has a close relationship with a party, is allowed to sit. In *Riddle v. Commonwealth,* Ky.App., 864 S.W.2d 308 (1993), the Court of Appeals determined that prospective jurors who had a previous professional relationship with a prosecuting attorney, and who further stated they would pursue such a relationship in the future, should be disqualified for cause by the trial court. We expressly agreed with *Riddle* in *Fugate v. Commonwealth,* Ky., 993 S.W.2d 931, 938 (1999). If a prospective juror should be excused for cause when he or she intends to pursue a future relationship with an attorney, it is our belief that common sense dictates disqualification of a juror who has a present, ongoing physician-patient relationship with a defendant physician in a medical malpractice action. There need not be a showing of actual bias where, as here, bias is clearly implied by the personal relationships.

It was reversible error for the trial court not to dismiss the prospective jurors who were current patients of Dr. Moses. Consequently, Bowman suffered prejudice as she could have exercised a peremptory challenge on another juror. *See Fugate, supra.* Accordingly, we reverse for a new trial.

### III.

Bowman also complains that the trial court erred in not allowing her to cross-examine Dr. Perkins by using portions of the discovery deposition of Dr. Perkins' expert witness. However, Bowman did not introduce this deposition into evidence. Nor did she question Dr. Perkins via avowal concerning the relevant portions of the deposition. The Court of Appeals declined to review this issue.

Bowman asserts that an avowal is not necessary when there is sufficient evidence to review an issue. However, in *Commonwealth v. Ferrell,* Ky., 17 S.W.3d 520, 525 (2000), we specifically held that "a party must offer an avowal *by the witness* in order to preserve for appellate review an issue concerning the exclusion of evidence." Absent an avowal, we are simply not able to determine how Dr. Perkins would have responded to questions pertaining to his expert's deposition. Therefore, Bowman's failure to offer an avowal or otherwise introduce the relevant portions of the expert's deposition into the record makes it impossible for us to review the allegation of error. Thus, this issue is not properly preserved for appellate review and we need not address it further.

For the reasons set forth above, this cause is remanded to the Whitley Circuit Court for a new trial against Dr. Perkins and Bernard C. Moses, M.D., P.S.C., in conformity with the views expressed herein.

LAMBERT, C.J., and COOPER, J., concur.

KELLER, J., joins as to Parts I and III, but, by separate opinion, concurs in result only as to Part II.

JOHNSTONE, J., dissents by separate opinion, with GRAVES and WINTERSHEIMER, JJ., joining that dissent.

Concurring opinion by Justice KELLER.

I join Parts I and III of the majority opinion, but concur only in the result reached in Part II, and I write separately in order to explain my views. Although I agree with the majority opinion's conclusion that the trial court erred in failing to excuse Jurors No. 7 and 60 for cause, I find it significant that Juror No. 60 was removed with a peremptory challenge and did not sit on the jury. Accordingly, for reasons that I have explained previously in my dissenting opinions in *Gamble v. Commonwealth*, Ky., 68 S.W.3d 367, 374–5 (2002) and *Stopher v. Commonwealth*, Ky., 57 S.W.3d 787, 813–17 (2001), the trial court's error in failing to excuse Juror No. 60 for cause was harmless. I concur in the majority opinion's holding that reverses this case for a new trial, however, because Juror No. 7 *did sit* on the jury, and Appellants were thus prejudiced by the trial court's erroneous failure to excuse Juror No. 7.

Dissenting opinion by Justice JOHNSTONE.

Respectfully, I dissent from that portion of the majority opinion that holds that "a current and ongoing physician-patient relationship is such a close relationship where a trial court should presume the possibility of bias." *Op.* at 402. The following is the entirety of the voir dire conducted of the two jurors at issue:

### JUROR NO. 60

JUROR NO. 60: But he is my doctor.

MR. DECKER: Who is your doctor?

JUROR NO. 60: Dr. Moses.

MR. DECKER: And what number were you?

THE COURT: Let me interject one thing, Mr. Decker, if I may.

Ladies and gentlemen of the jury panel, you're a fairly new panel to the trials and I think I've mentioned this to you before, but let me reiterate to you that there are certain cases that all of you will be qualified to sit on, then there are certain cases for something in your background that would disqualify you for one particular case, and if that is the case please let us know early so we can go ahead with the jury selection. So, if there's something that would cause you to lean one way or the other, just let us know that and then we can go on. With that said, continue, Mr. Decker.

MR. DECKER: Thank you, your Honor.

Number 60, given that Dr. Moses, how long has he been your doctor, sir?

JUROR NO. 60: Ever since he's been a doctor, I guess.

MR. DECKER: Do you think that that might tend to make you lean just a little bit in his favor, based upon the evidence? If it was an equal question would you lean just because that he'd been your doctor for many years?

JUROR NO. 60: No, sir.

MR. DECKER: You don't think so? Okay.

### JUROR NO. 7

THE COURT: Juror No. 7, let me ask you first if you've listened to all the questions that have been asked up to this point? Would you have answered yes to any of those questions?

JUROR NO. 7: Doctor Moses is my doctor.

THE COURT: Dr. Moses is your doctor? Would the fact that Doctor Moses is your doctor cause you to be, and we use the term "bias," favor the doctor more than the other party? All right. You may continue, Mr. Decker.

MR. DECKER: Thank you, your Honor.

The majority attempts to distinguish the case of *Altman v. Allen,* Ky., 850 S.W.2d 44 (1992), by noting that the jurors in question here are current patients of a defendant-physician, not former ones. However, the majority overlooks the following analysis by Justice Wintersheimer in *Altman:*

> A careful review of the record in this case indicates there is no basis for a "presumed bias" theory. There is no foundation to establish a per se exclusion and no proof has been presented to establish bias. During the *voir dire* examination, there was no comprehensive effort to explore or develop the doctor/patient relationships of the three jurors to the extent necessary to determine bias. There is no evidence that the jurors were frequent patients or that they even had a good relationship with the doctors.

*Altman,* 850 S.W.2d at 45.

The same is true here. There was no attempt by appellant's counsel to determine whether the relationship between doctor and patient was good or bad. How frequent was the treatment rendered by the doctor to the patient? Did the patient feel the treatment rendered was appropriate and competent?

Moreover, the majority's attempt to compare the doctor-patient relationship to the attorney-client relationship is questionable in the current state of medical treatment. While a legal client continues to seek out and retain an attorney of his or her choice, the same is not always true of the doctor-patient relationship. Medical choice is often insurance driven. Patients are often compelled to choose a doctor listed on the "provider list" supplied by the insured's carrier, even the latter not always the first choice of the patient. And there is nothing more harmful to a good doctor-patient relationship than languishing in an overcrowded waiting room of a doctor that the patient was compelled to choose. As the majority states, "one may posit that this relationship is not as strong as in years past. . . ." *Op.* at 402.

I enthusiastically agree that there are those situations where a juror should be disqualified when the juror has such a close relationship with a party despite the juror's claim to be free from bias. I also concur with the proposition that the trial courts enjoy wide discretion in ruling upon challenges of prospective jurors for cause. However, I cannot agree that the circumstances before us in this case, namely, the bare fact that a juror is a current patient of a party doctor, is a basis for automatic presumption of bias and a *per se* disqualification. We never held so in years past when the doctor-patient relationship was at its strongest, and we should not so hold now. Rather, we should leave the question to our seasoned trial judges who know that the magic answer is not a cure for real bias.

GRAVES and WINTERSHEIMER, JJ., join this dissent.