Linda S. GRUBB and Laymon Grubb, Individually and as Co–Administrators of the Estate of Krystal Denise Meredith; and Linda S. Grubb and Laymon Grubb, as Grandparents and Next Friends of Alyssa B. Meredith, a Minor, Appellants

v.

NORTON HOSPITALS, INC.; Luis M. Velasco, M.D.; and James B. Haile, M.D., Appellees.

No. 2010–SC–000532–DG.

Supreme Court of Kentucky.

May 23, 2013.

As Modified May 29, 2013.

Francis Thomas Conway, Chadwick Neal Gardner, Scott Thomas Roby, Louisville, Counsel for Appellants.

Bradley R. Hume, Beth Hendrickson McMasters, Allison Olczak Wildman, Louisville, Heather Renee Cash, Counsel for Appellee, Norton Hospitals, Inc.

Craig Louis Johnson, Brandon M. Howell, Louisville, Counsel for Appellee, Luis M. Velasco, M.D.

Daniel Garland Brown, David Bryan Gazak, Robert Joseph Shilts, Louisville, Counsel for Appellee, James B. Haile, M.D.

Opinion of the Court by Justice CUNNINGHAM.

This medical malpractice claim was brought by Linda and Laymon Grubb, the parents of Krystal Meredith, individually and as next friends of Krystal's daughter, Alyssa (collectively, "the Grubbs"). Krystal was twenty-years old and thirty-seven-weeks pregnant when she began to experience abdominal pain on January 5, 2007. She was taken to Norton Hospital and was treated by Dr. James Haile. Dr. Haile

was covering for Krystal's regular obstetrician, Dr. Luis Velasco.

Between January 5 and January 7, Krystal visited the Norton Hospital emergency room three times, each time complaining of severe abdominal pain. The parties dispute exactly what occurred during these visits. Nonetheless, it is undisputed that Krystal was sent home following the first two visits, but was admitted to the hospital on the evening of January 7.

Dr. Haile ordered blood work on January 7, which revealed an ongoing infection. The following morning, Dr. Velasco resumed care of Krystal. Labor was induced and Krystal delivered a healthy daughter, Alyssa Brook. Following delivery, Krystal became very weak and continued to experience severe abdominal pain. Exploratory surgery on January 8 revealed a ruptured appendix and abscess. Despite this surgical intervention, Krystal developed acute respiratory distress syndrome. Tragically, as a result of this complication, she passed away on February 1.

The Grubbs filed suit against Dr. Velasco, Dr. Haile, and Norton Hospitals, Inc. for wrongful death and loss of parental consortium. A Jefferson County jury found in favor of the defendants and the Grubbs appealed. The Court of Appeals affirmed the judgment and this Court granted discretionary review. For the foregoing reasons, we reverse the decision of the Court of. Appeals.

### Voir Dire

■ The Grubbs first allege that the trial court erred in failing to strike three jurors for cause. Generally speaking, the trial court enjoys "broad discretion" in deciding whether a juror should be stricken for cause. *Gould v. Charlton Co. Inc.*, 929 S.W.2d 734, 737 (Ky.1996). "The central inquiry is whether a prospective juror can conform his or her views to the require-

ments of the law, and render a fair and impartial verdict based solely on the evidence[.]" *Wood v. Commonwealth*, 178 S.W.3d 500, 516 (Ky.2005). We will reverse only upon a showing that the trial court abused its discretion. *Rankin v. Commonwealth*, 327 S.W.3d 492, 498 (Ky. 2010).

### Juror Pacanowski

■ During general voir dire, the trial court asked whether any member of the panel had a relationship with any of the parties. Mr. Pacanowski responded that he "[has] a son that's a manager at Norton." When further questioned by plaintiffs' counsel about this disclosure, he elaborated: "My son is a purchasing manager over there for about ten years and if it was a close call, like [inaudible] said, I'd probably have problems with it." No follow-up questions were posed by counsel. Later, when the entire panel was asked whether they could remain fair and impartial, Mr. Pacanowski did not indicate otherwise. After a motion to strike for cause was denied, the Grubbs exercised a peremptory strike to remove Mr. Pacanowski from the panel.

The record concerning Mr. Pacanowski is extremely brief, as counsel did not attempt to further explore his initial statement indicating bias. Therefore, we are confined to the few statements that Mr. Pacanowski offered. This minimal information indicated an inability to be impartial. His son's employment relationship with the parent corporation of a defendant, coupled with his expression of doubt about his ability to be impartial, was sufficient to warrant Mr. Pacanowski's removal for cause. The trial court erred in refusing to strike this juror. *See Davenport v. Ephriam McDowell Memorial Hosp., Inc.*, 769 S.W.2d 56, 59 (Ky.App.1988) (former employee of defendant hospital who ex-

pressed doubt regarding her ability to be impartial was unqualified).

### Juror Guelda

■ Dr. Larry Griffin, a physician specializing in obstetrics and gynecology, testified as an expert witness on behalf of the defendants. When asked if anyone on the panel knew Dr. Griffin, Ms. Guelda indicated that he had delivered her two children. The following exchange occurred:

> Plaintiffs' counsel: The fact that he delivered your children, would that cause you to give any more credence to his testimony on this matter?
>
> Ms. Guelda: It may.
>
> Plaintiffs' counsel: It may? How many children has Dr. Griffin delivered?
>
> Ms. Guelda: Both of them were c-sections.
>
> Plaintiffs' counsel: The fact that Dr. Griffin is here testifying for Norton Hospital, Dr. Velasco, would that cause you . . . ?
>
> Ms. Guelda: No. Not as long as he's not involved.

The Grubbs moved the trial court to strike Ms. Guelda for cause, which was denied. They did not exercise a peremptory strike to remove her from the panel and she ultimately sat on the jury during trial. However, prior to the jury retiring, Ms. Guelda was randomly selected as an alternate to be excused and did not participate in the deliberations or verdict.

Again, we have little further information regarding Ms. Guelda's opinion of Dr. Griffin or her present relationship with him, as no additional inquiry was made by plaintiffs' counsel. Certainly, "[t]here is no basis for an automatic presumption of bias on the part of jurors towards a former physician." *Altman v. Allen*, 850 S.W.2d 44, 46 (Ky.1992). *Cf. Bowman ex rel. Bowman v. Perkins*, 135 S.W.3d 399 (Ky.2004) (presumption of bias exists where juror has current and ongoing relationship with physician-defendant). However, Ms. Guelda's special relationship with Dr. Griffin must be considered along with her responses. Surely, a relationship between a doctor and a child-bearing patient may be presumed to be especially close and personal, and Ms. Guelda offered no information indicating otherwise. And though brief, her statements unequivocally and understandably indicate her reservations and reluctance. The trial court erred in failing to strike this juror for cause.

### Juror Deshazer

■ When the trial court asked if any panel member knew any of the parties, Mr. Deshazer replied: "I practice law and my law firm has done some work for Norton." He was never asked to clarify to which branch of the Norton group of corporations he was referring. Later, counsel for Dr. Velasco inquired whether any panel member was familiar with the term "standard of care." Mr. Deshazer answered in the affirmative, stating that his law firm "does medical malpractice defense."

■ The trial court did not abuse its discretion in denying the Grubbs' motion to remove this juror for cause. A prior attorney-client relationship between a juror and trial counsel does not create a presumption of bias, though such juror should be excused if he or she indicates the intent to seek a future attorney-client relationship. *Riddle v. Commonwealth*, 864 S.W.2d 308, 310 (Ky.App.1993). *See also Fugate v. Commonwealth*, 993 S.W.2d 931, 938 (Ky.1999) (approving of holding in *Riddle v. Commonwealth*). Here, no attempt was made to discover the nature of Mr. Deshazer's law firm's relationship with Norton, whether the representation was ongoing, whether Mr. Deshazer expected his law firm to represent

Norton in the future, or whether Mr. Deshazer had personally worked on any Norton matter. There is simply insufficient evidence regarding the nature of Mr. Deshazer's professional relationship with Norton to presume bias. Additionally, the record is devoid of additional evidence that would create a substantial doubt regarding Mr. Deshazer's ability to render a fair and impartial verdict. The trial court did not err.

### Remedy

■■■■ Having determined that the trial court twice erred in refusing to strike jurors for cause, we next turn to the proper remedy for such errors. In *Shane v. Commonwealth*, 243 S.W.3d 336, 341 (Ky.2007), we reaffirmed that a litigant's exercise of peremptory strikes is a substantial right and held that harmless error analysis is inapplicable where a peremptory strike is used to remove a juror who should have been excused for cause. Later, in *Gabbard v. Commonwealth*, we refined the holding in *Shane* to require the party to indicate on their strike sheet the additional juror whom the party *would have* removed had the motion to strike been granted. 297 S.W.3d 844, 854 (Ky.2009). If that designated juror actually sat on the jury, then the trial court's error resulted in prejudice and reversal is required. *Id.* Together, *Shane* and *Gabbard* reinstated the rule which had been briefly overruled by this Court's decision in *Morgan v. Commonwealth*, 189 S.W.3d 99 (Ky.2006).

Since its rendition, this Court has not expressly held that *Shane* and its progeny are applicable to civil cases. However, excepting the *"Morgan"* period, Kentucky courts had long viewed the peremptory challenge as a substantial right of both the criminal and civil litigant. *See Olympic Realty Co. v. Kamer*, 283 Ky. 432, 141 S.W.2d 293, 297 (1940) ("[T]he right to

challenge a given number of jurors without showing cause is one of the most important rights to a litigant[.]"). *See also Bowling Green Municipal Utilities v. Atmos Energy Corp.*, 989 S.W.2d 577, 580 (Ky.1999) ("[T]his Court has elevated the provision of CR 47.03 to the level of being a substantial right[.]"). Accordingly, this Court, and our predecessor Court, refused to engage in harmless error review when a civil litigant had used a peremptory strike to remove an unqualified juror and subsequently exhausted all peremptory strikes. *See Bowman v. Perkins*, 135 S.W.3d at 401 (reversing judgment where the trial court erroneously denied a challenge for cause, thereby forcing the appellant to prematurely exhaust peremptory challenges). *See also Carrithers v. Jean's Ex'r*, 249 Ky. 695, 61 S.W.2d 323 (1933) (refusing to reverse for improperly denied challenge for cause where litigant failed to exhaust all peremptory strikes).

We have likewise not required a showing of actual prejudice where the trial court erroneously grants excessive peremptory strikes to one civil litigant. In *Kentucky Farm Bureau Mutual Ins. Co. v. Cook*, the trial court improperly awarded six additional peremptory challenges to the defendants. 590 S.W.2d 875 (Ky.1979). This Court refused to engage in harmless error analysis, holding that the "proper allocation between litigants is a substantial right which so pervades the process that its erroneous application requires reversal as a matter of law if the issue is properly preserved by the adversely affected litigant." 590 S.W.2d at 877. There is no substantive distinction between the litigant who is allotted fewer peremptory strikes than his opposing party and the litigant who is forced to exercise a peremptory strike on a juror who is unqualified as a matter of law.

■ Applying the principles set forth in *Shane* and *Gabbard* to the present matter, the judgment in this case must be reversed. The Grubbs used a peremptory strike to remove Juror Pacanowski, who should have been removed for cause. The Grubbs also exhausted their complement of peremptory strikes and identified two sitting jurors whom they would have removed had any peremptory strikes remained. Though the trial court erred in refusing to excuse Juror Guelda, the Grubbs did not exercise a peremptory strike to remove her from the jury. Further, because she was randomly selected to be excused as an alternate, she did not participate in the jury's deliberations. As such, there was no reversible error with respect to Juror Guelda.

In light of this conclusion, we need not address the Grubbs' additional allegations of error. Accordingly, the decision of the Court of Appeals is reversed and the judgment of the Jefferson Circuit Court is hereby set aside. This matter is remanded to the trial court for further proceedings in accordance with this opinion.

NOBLE, SCOTT and VENTERS, JJ., concur. MINTON, C.J., concurs in result only by separate opinion in which ABRAMSON and KELLER, JJ., join.

MINTON, C.J., concurring in result only.

Respectfully, I concur only in the majority's result. I agree that the trial court abused its discretion in refusing to strike Juror Pacanowski and did not abuse its discretion in retaining Juror Deshazer on the jury. But I disagree with the majority's conclusion that the trial court should have struck Juror Guelda for cause.

Dr. Griffin, an expert witness on behalf of the defendants, had delivered Juror Guelda's two children. When asked if the fact that Dr. Griffin was testifying for the defendant would sway her opinion, Juror Guelda responded, "No. Not as long as he's not involved." The majority finds that the trial court erred in refusing to strike this juror for cause due to the juror's "special relationship with Dr. Griffin" and her reservations about remaining unbiased.

This Court has explicitly denounced any presumption of a special relationship between a woman and her obstetrician in the context of a motion to strike a juror for cause. "No court should speculate so as to presume a special bond between a woman and her obstetrician. Similar and equally unwarranted presumptions could be made about psychiatrists, psychologists, clergy[,] and other counsel-type relationships." [1]

Moreover, I disagree with the majority's interpretation of Juror Guelda's statements as unequivocally indicating her reservations and reluctance about Dr. Griffin's involvement. Rather, it seems clear that Juror Guelda would not be swayed by Dr. Griffin's participation in the case as long as he was not a party. So I would find that the trial court did not abuse its discretion in denying the Grubbs' motion to strike Juror Guelda for cause.

I also write separately to express my concern about counsel's failure adequately to develop the record to support its motions to strike the three jurors for cause. When examining the potential bias of each juror at issue here, counsel intentionally stopped one or two questions shy of establishing, with certainty, whether the jurors could render a fair and impartial verdict.

1. *Altman v. Allen,* 850 S.W.2d 44, 46 (Ky. 1992) (holding that no presumption of bias exists in a medical malpractice action where juror was former patient of defendant-doctor).

I agree with the majority that the record here contains insufficient evidence regarding the nature of Juror Deshazer's professional relationship with Norton. Counsel failed to establish any facts that would have led to a presumption of bias. Accordingly, the trial court did not err in refusing to strike the juror for cause.

A scant record also exists regarding Juror Pacanowski, whose son was a manager at Norton. Pacanowski stated only that "if it was a close call," he would probably "have problems with it." We are left to speculate whether Pacanowski's bias would be, in fact, in favor of Norton, as the Grubbs contend. I can easily imagine any number of scenarios in which his son's employment at Norton would actually bias him against the company. Still, I am constrained to agree with the majority that the trial court's refusal to strike Pacanowski for cause was error. The juror's indication that he could not remain impartial required him to be struck from the jury, regardless of which party the juror would have favored. But I am bothered by counsel's failure to explore Pacanowski's initial statement indicating bias.

The parties are obligated fully to develop the record as to a juror's ability to conform his or her views to the requirements of the law. Where an insufficient record exists, appellate courts should not interfere with the trial court's discretion. In this case, the record is sufficient, albeit barely sufficient, to require the conclusion that Juror Pacanowski did not have the requisite impartiality.

ABRAMSON and KELLER, JJ., join.