Lester Keith HURT, Appellant

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2011–SC–000760–MR.

Supreme Court of Kentucky.

Sept. 26, 2013.

Karen Shuff Maurer, Krankfort, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, James Daryl Havey, Counsel for Appellee.

Opinion of the Court by Justice ABRAMSON.

Lester Hurt appeals as a matter of right from a judgment of the Perry Circuit Court sentencing him to life in prison for wanton murder, three counts of wanton endangerment in the first degree, criminal mischief, and assault in the fourth degree. Hurt raises two errors on appeal. First, he claims that the trial court abused its discretion when it refused to excuse a juror for cause on the basis of a lack of impartiality. Second, Hurt claims the trial court erred when it denied his motion for directed verdict as to his wanton murder and wanton endangerment charges. Having reviewed the record, we affirm the judgment of the Perry Circuit Court.

## FACTS

On October 2, 2010, Lester Hurt joined his brothers and friends at an abandoned strip-mine for a night of drinking around a campfire. At some point in the evening, Julius "Ed" Williams and others, including Williams's son Keith and friend Jordan Estep, arrived at the site. In the early morning hours of October 3rd, a fight broke out between the two groups. In a hurried attempt to leave the campsite, the Jeep carrying Williams and his party struck Hurt's friend as the vehicle sped away. Hurt gave chase in his pick-up truck, quickly reaching Williams's vehicle on a dirt road. He repeatedly rammed the back of the Jeep, causing it to veer off the road and become stuck on a steep embankment. A skirmish ensued, with Hurt exiting his vehicle and attacking Estep through the open windows of the Jeep. Hurt then returned to the truck and continued to push the Jeep further down the embankment until it stalled. Williams, who exited the vehicle during the melee and had fallen down, was crushed to death by Hurt's truck. The attack continued with Hurt and his brother pulling Estep and Keith Williams from the Jeep and onto the ground, where they were beaten and kicked. Estep and Keith Williams eventually fled on foot and hid in the woods before retreating to a nearby cabin. Williams's body was found later that morning.

Kentucky State Police detectives interviewed several witnesses over the course of four days before arresting Hurt, who admitted that he may have struck Williams with his truck. Hurt was tried and convicted of wanton murder, three counts of wanton endangerment in the first degree, criminal mischief, and fourth degree assault. He received a sentence of life in prison for the wanton murder. The five-year sentences on each wanton endangerment charge, twelve-month sentence for assault and ninety-day sentence for criminal mischief were ordered to run concurrently. This appeal followed.

## ANALYSIS

**I. The Challenge to the Trial Court's Refusal To Remove a Juror For Cause is Unpreserved.**

During *voir dire,* the Commonwealth inquired of the prospective jurors if

personal experiences with drugs and/or alcohol would impair their ability to render a fair verdict. In response, Juror 149 revealed some uncertainty in his ability to serve because members of his family had struggled with substance abuse in the past. After relating his experiences to the trial court, Juror 149 stated that he could listen to all of the evidence and independently render a verdict. The trial court denied Hurt's ensuing motion to strike for cause, finding that Juror 149, through some of his responses, was likely trying to avoid jury service, and that nothing in the totality of his responses indicated that he would be biased in favor of or against the defendant.

■ Hurt now argues that the trial court abused its discretion when it refused to excuse the juror for cause, forcing Hurt to use a peremptory strike on Juror 149 that he would have otherwise used on Juror 241, who ultimately sat on the jury. A trial court's erroneous failure to excuse a juror for cause necessitating the use of a peremptory strike is reversible error. *Shane v. Commonwealth*, 243 S.W.3d 336 (Ky.2007). While prejudice is presumed in such cases, in *Gabbard v. Commonwealth*, 297 S.W.3d 844 (Ky.2009) we declared that the error is non-prejudicial when other jurors whom the party would have excused with peremptory strikes do not actually sit on the jury. In *Gabbard*, this Court concluded that in order to bring a claim under *Shane*, the complaining party must, in addition to exhausting all peremptory strikes, "identify on his strike sheet any additional jurors he would have struck." *Gabbard*, 297 S.W.3d at 854; *see also Grubb v. Norton Hospitals, Inc.*, 401 S.W.3d 483, 487–88 (Ky.2013). The defendant in *Gabbard* identified who he would have stricken on his strike sheet and one of those jurors actually sat on the jury, which led to this Court's reversal of the conviction.

Hurt exhausted all of his peremptory strikes and made a statement on the record immediately *following* the seating of the jury informing the trial court that had the motion to strike Juror 149 been granted, he would have used a peremptory strike to remove Juror 241. Hurt raised the issue again in his Motion for a New Trial. Despite making these declarations, Hurt concedes that he failed to indicate on his strike sheet *before* the jury was seated that he would have exercised a peremptory strike against Juror 241 had the trial court excused Juror 149 for cause.

Hurt's challenges, arising *after* the seating of the jury, were untimely and therefore insufficient to preserve the issue for appellate review under our *Gabbard* standard. 297 S.W.3d at 854. The practice of designating jurors on a strike sheet preserves the challenge by indicating before the seating of the jury exactly who the party was unable to strike as a result of the trial court's allegedly erroneous failure to excuse a juror for cause. Then if jurors whom the party wished to use a peremptory challenge against actually serve on the jury, it is clear such a jury is "not the jury [the] party was entitled to select." *Shane*, 243 S.W.3d at 340. Here, there were no motions to strike for cause made against Juror 241, and he was not identified on defense counsel's strike sheet as a juror whom Hurt would have removed but for the need to use a peremptory challenge against Juror 149. Because the panel of fourteen was randomly drawn from a pool of eighteen, the parties had no inclination of which venirepersons would ultimately sit on the jury. Once the jury was seated, Hurt informed the court for the first time that he would have stricken Juror 241. This was too late. Without clear parameters, a party could arbitrarily object to any of the newly-seated jurors by making an untimely statement for the record or Mo-

tion for a New Trial. The *Gabbard* decision addressed the need for an express requirement that parties identify jurors that would have been struck[1] before the jury is empanelled instead of waiting until the jury is seated and then stating that one of those jurors would have been struck. To allow litigants to lie in wait until the jury is empanelled before raising a *Shane* challenge would blatantly undermine our *Gabbard* rule.

In short, our holding in *Gabbard* has been strictly applied by this Court, and we see no persuasive reason to depart from its application here. *See Grubb*, 401 S.W.3d at 488; *McDaniel v. Commonwealth*, 341 S.W.3d 89, 92 (Ky.2011). *Paulley v. Commonwealth*, 323 S.W.3d 715, 720 (Ky.2010) (reaffirming *Gabbard* while holding that the rule does not apply retroactively). Therefore, we will not address the merits of the argument, as Hurt failed to properly preserve the issue for appellate review. Hurt has not asked this Court for palpable error review, and under the facts of this case we will not do so *sua sponte*. *See Shepherd v. Commonwealth*, 251 S.W.3d 309, 316 (Ky.2008).[2]

## II. Hurt Was Not Entitled to a Directed Verdict.

 Hurt asserts that the trial court erred when it denied his motions for directed verdicts as to the wanton murder and three wanton endangerment charges, arguing that his behavior on the night of Williams's death did not rise to the requisite level of wantonness. He asserts that the Commonwealth failed to produce evidence of substance that he created a substantial risk of injury or death to any person, and that "simply ramming the back of [a] Jeep, slowly pushing it down the road" is not evidence of wanton conduct.

 On a motion for directed verdict, a trial court must draw all fair and reasonable inferences in favor of the Commonwealth, and if the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a verdict for acquittal should not be directed. *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky.1991). A reviewing court must determine "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v. Sawhill*, 660 S.W.2d 3, 5 (Ky.1983).

### a. Wanton murder.

Kentucky Revised Statute (KRS) 507.020(1)(b) provides that a person is guilty of wanton murder when: "Including, but not limited to, the operation of a motor vehicle under circumstances manifesting extreme indifference to human life, he wantonly engages in conduct which creates a grave risk of death to another person and thereby causes the death of another person."

1. "Though this Court's recent cases have not expressly required that a defendant identify the other jurors he would have struck if his for-cause strikes were granted in order to bring a claim under *Shane*, the wisdom of such a requirement has become clear. Thus, this Court concludes that in order to complain on appeal that he was denied a peremptory challenge by a trial judge's erroneous failure to grant a for-cause strike, the defendant must identify on his strike sheet any additional jurors he would have struck. Appellant did just that here by identifying two additional jurors he would have struck." *Gabbard*, 297 S.W.3d at 854.

2. Even were we to engage in palpable error review pursuant to Kentucky Rule of Criminal Procedure (RCr) 10.26, there is no evidence of manifest injustice in the record before us with respect to the seating of Juror 241.

To engage in wanton conduct, one must be aware of and consciously disregard "a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." KRS 501.020(3). A wanton mental state alone is not enough to justify a conviction under KRS 507.020(1)(b) for wanton murder, as evidence of further circumstances manifesting extreme indifference to human life must accompany an actor's wantonness. *Brown v. Commonwealth*, 174 S.W.3d 421, 425 (Ky.2005).[3] This element has been described as "aggravated wantonness." *Graves v. Commonwealth*, 17 S.W.3d 858, 863 (Ky.2000). Oft-cited "classic" examples of aggravated wantonness include firing a gun into an occupied space, planting a bomb in a public place, or derailing a speeding train. *Brown*, 174 S.W.3d at 426, *citing* KRS 507.020 (1974 cmt).

At trial, testimony of officers and eyewitnesses established that Hurt, who consumed five to six beers in the hours leading up to Williams's death, had a "small buzz." The jury also heard testimony from Trinity Owens, who was asleep in Hurt's vehicle when the pursuit began. Owens testified that Hurt entered and started the vehicle so quickly that she did not have time to get out of the truck. She described the truck "speeding up" in order to catch the Jeep. Owens further testified that Hurt's erratic driving and ramming of the Jeep caused her to strike her head on the window and interior of the truck three times. Forensic evidence and eyewitness testimony demonstrated that Hurt rammed the Jeep with enough force to push it off the road onto a hillside. Testimony from the Commonwealth's expert established that based on Williams's injuries and his apparent position under the tires of Hurt's vehicle, Hurt either witnessed Williams fall on his own, or Hurt struck Williams with enough force to knock him to the ground. Hurt admitted to detectives that he may have hit Williams.

We cannot say that the jury was unreasonable in concluding that Hurt's conduct manifested extreme indifference to human life. The Commonwealth produced evidence of substance proving that Hurt disregarded the grave risk of injury or death when he operated his vehicle "in an improper manner far below the standard that a reasonable person would observe." *Ramsey v. Commonwealth*, 157 S.W.3d 194, 198 (Ky.2005). Even if we discount the testimony establishing that Hurt was driving recklessly and may have been intoxicated, his behavior was no less dangerous. Fatalities and serious physical injury may result from the wanton operation of a vehicle at normal speeds by normally functioning individuals. In *Brown*, 174 S.W.3d 421, we affirmed a trial court's denial of a motion for directed verdict in a case where a defendant, who was "drag racing" and watching television while traveling five to fifteen miles over the posted speed limit, ran a red light and struck another vehicle. Although the defendant in *Brown* was not under the influence of drugs or alcohol, his behavior created a substantial risk which manifested an extreme indifference to human life. 174 S.W.3d at 428. *See also Berryman v. Commonwealth*, 237 S.W.3d

---

**3.** "Wantonness suffices to establish culpability for manslaughter in the second degree, but it does not suffice to establish culpability for wanton murder, which requires the additional state-of-mind element of manifest extreme indifference to human life." *McGinnis v. Commonwealth*, 875 S.W.2d 518, 525 (Ky.1994) *quoting Sizemore v. Commonwealth*, 844 S.W.2d 397, 403 (Ky.1992).

175 (Ky.2007); *Sluss v. Commonwealth,* 381 S.W.3d 215, 220 (Ky.2012).

As correctly noted by Hurt, numerous cases regarding unintended vehicular homicides involve circumstances where the appellant was intoxicated and/or driving at an excessive speed at the time of the crime.[4] However, while speed and driver impairment are facts that a court will certainly consider, there is no "checklist" of factors that suffice to establish the elements of wanton murder. *Sluss,* 381 S.W.3d at 220. Instead, the fact finder must examine the totality of circumstances in each case to determine if the actor exhibited the requisite statutory elements under KRS 507.020(1)(b). *Id.*

Hurt's behavior, when viewed in the light most favorable to the Commonwealth, clearly amounts to something "more egregious mental state than mere wantonness."[5] *Brown,* 174 S.W.3d at 425 *citing McGinnis,* 875 S.W.2d 518. Williams's death was not the result of a mere traffic violation, nor did it arise from an isolated incident of reckless driving. *See Johnson v. Commonwealth,* 885 S.W.2d 951 (Ky. 1994); *Commonwealth v. Mitchell,* 41 S.W.3d 434 (Ky.2001). It was not unreasonable for the jury to conclude that deliberately engaging in a car chase on a rural, dirt road which ends with a vehicle being rammed repeatedly and forced off an embankment constituted a circumstance manifesting an extreme indifference to human life. Certainly, Hurt recognized the substantial risk to Williams personally, and yet continued to push the Jeep further down the embankment with Williams pinned beneath his tires, resulting in his death. We find that the trial court did not err in denying Hurt's motion for a directed verdict as to wanton murder.

**b. Wanton endangerment**

■ In addition to wanton murder, Hurt was also charged and convicted of first-degree wanton endangerment as to Owens, Keith Williams, and Estep. The first-degree wanton endangerment statute, KRS 508.060(1), provides that: "A person is guilty of wanton endangerment in the first degree when, under circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person."

We have already determined that it was not unreasonable for the jury to determine that Hurt's behavior manifested an extreme indifference to human life, and that he possessed the requisite wanton mental state under the statute. Therefore, the question that remains is whether it was unreasonable for the jury to conclude that the act of pursuing, ramming, and forcing a vehicle off of an embankment created a substantial danger of death or serious physical injury to the other passengers in the two vehicles besides Julius "Ed" Williams, the homicide victim. We conclude that it was not at all unreasonable for the jury to so find.

In *Brown v. Commonwealth,* 297 S.W.3d 557 (Ky.2009), this Court found that a driver who, while attempting to evade police officers, drove down the center lane of a road causing other vehicles to swerve to

---

**4.** See *Hamilton v. Commonwealth,* 560 S.W.2d 539 (Ky.1977); *Walden v. Commonwealth,* 805 S.W.2d 102, 104 (Ky.1991) *overruled on other grounds by Commonwealth v. Burge,* 947 S.W.2d 805 (Ky.1996); *Estep v. Commonwealth,* 957 S.W.2d 191 (Ky.1997); *Love v. Commonwealth,* 55 S.W.3d 816 (Ky. 2001); *Cook v. Commonwealth,* 129 S.W.3d 351 (Ky.2004).

**5.** In addition to wanton murder, the jury was instructed on second-degree manslaughter, and reckless homicide.

avoid collisions, was not entitled to a directed verdict of acquittal for his charge of first-degree wanton endangerment. In determining that the driver's behavior created a substantial risk of death or serious injury to his passenger, we held that despite that fact that the driver "avoided getting into a catastrophic accident," he nevertheless "repeatedly foisted the risk of catastrophic injury onto his passenger." 297 S.W.3d at 560.

Hurt's conduct similarly "foisted the risk" of death or substantial injury onto his own passenger, Owens, and those in the other vehicle. This was not a case where the victims' proximity to the source of the danger rendered the risk of serious injury remote. *See Swan v. Commonwealth,* 384 S.W.3d 77 (Ky.2012). Rather, Hurt's aggressive driving and repeated use of his vehicle as a literal battering-ram created a substantially dangerous situation for all of the passengers and anyone in the vicinity. *See Brown,* 174 S.W.3d 421 (holding that running a red light subjects anyone who may be passing through that intersection to the substantial risk of injury or death). Aside from the obvious dangers created by the aggressive pursuit, Hurt, by exiting his vehicle one time to attack the men and then returning to the vehicle to resume ramming the Jeep, engineered a situation wherein it was highly probable that any, if not all, of the passengers would attempt to exit the vehicles, just as Williams did. As for Owens, Hurt's own involuntary passenger, she struck her head three times during the chase and had no memory of the full incident. The Commonwealth maintains she either lost consciousness from the blows to her head or suffered post-traumatic amnesia. Given the nature of the attack, it was simply fortuitous that Hurt failed to cause serious injury to Owens, Estep, or Keith Williams. *See Hennemeyer v. Commonwealth,* 580 S.W.2d 211 (Ky.1979). In sum, we find that it was not unreasonable for the jury to convict Hurt of three counts of wanton endangerment in the first degree.

## CONCLUSION

For the reasons stated herein, we affirm the judgment of the Perry Circuit Court.

All sitting. All concur.