**Tommie BROWN, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2008–SC–000281–MR.

Supreme Court of Kentucky.

Oct. 29, 2009.

As Modified Dec. 15, 2009.

Shannon Renee Dupree, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Jeffrey Allan Cross, Criminal Appellate Division, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice NOBLE.

Appellant Tommie Brown was convicted in the Fulton Circuit Court of first-degree fleeing or evading police, first-degree wanton endangerment, two counts of second-degree wanton endangerment, reckless driving, disregarding a stop sign, driving on a suspended license, and being a first-degree persistent felony offender. On appeal, Appellant raises four issues. First, he argues that he was entitled to a directed verdict as to the first-degree wanton endangerment charge. Second, he argues that the judge erred in allowing the jury to hear testimony of his passenger's age and in referring to her age in jury instructions. Third, he argues that his convictions for first-degree fleeing or evading police and wanton endangerment constitute double jeopardy. Last, he argues that approving statements the judge made about the jury's sentencing recommendation shows that he was denied a fair tribunal during sentencing. For the reasons set forth below, Appellant's two convictions for second-degree wanton endangerment are reversed and vacated, and all others are affirmed.

## I. Background

Near midnight on November 25, 2007, Officer Vincent, Officer Latta, and Trooper Miller were operating a checkpoint, looking for drunk drivers. Officer Vincent saw Appellant driving his car on a nearby cemetery road, a route which circumvented the checkpoint. Officer Vincent then left the checkpoint to observe Appellant's driving.

Soon after Officer Vincent began observing Appellant's driving, Appellant began accelerating away from him. Once Appellant was driving above the speed limit, Officer Vincent attempted to pull him over by turning on his lights and siren. Appellant continued accelerating, and a chase ensued. During the chase, Officer Vincent's top speed reached almost eighty miles per hour. The roads had speed limits of twenty-five and thirty-five miles per hour.

During the chase, Appellant nearly caused three accidents. First, while driving down the center of the road, Appellant caused a driver coming from the opposite direction to swerve off the road to avoid a head-on collision with him. Later, another car had to swerve onto the sidewalk for the same reason. And at one point, Appellant lost control of his car, drove onto someone's front yard, and then drove between a telephone pole and a tree. Officer Vincent testified that the distance between the pole and the tree was so narrow that he was surprised Appellant's car could even fit through it.

Approximately ten minutes into the chase, Officer Latta and Trooper Miller closed down the checkpoint to assist Officer Vincent. They eventually caught up to him and Appellant, and they estimated that their top speed was between fifty and seventy miles per hour. Eventually, Appellant stopped in front of his mother's house, where the officers arrested him. Also in the car was Appellant's sixteen-year-old niece.

At trial, the jury was informed of the passenger's age, over Appellant's objection. During the penalty phase, the three officers referred to her as a "juvenile" and a "high school student." Additionally, the judge's instructions for second-degree wanton endangerment to the passenger described her as "his [Appellant's] passenger a high school student." Appellant did not object to the offered instructions or offer alternative instructions.

The jury convicted Appellant of first-degree wanton endangerment of his passenger, second-degree wanton endanger-

ment of Officer Vincent and of Officer Latta, reckless driving, disregarding a stop sign, driving on a suspended license, and being a first-degree persistent felony offender.

After the jury gave the judge its sentencing recommendations, the judge told the jury that he "would have found exactly the same as [they] found" and that Appellant's misdemeanor convictions of second-degree wanton endangerment to the two police officers was "[c]ertainly worth" the sentence the jury recommended. He also stated, however, that he was "not sure [he]'d have found him guilty in regard to a felony ... given the circumstances and evidence."

Appellant was sentenced to twenty years' imprisonment. He appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

## II.  Analysis

### A.  Directed Verdict of Acquittal

■ As this Court stated in *Commonwealth v. Benham*, 816 S.W.2d 186 (Ky. 1991), "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt...." *Id.* at 187. The test this Court must employ, therefore, is whether the jury was clearly unreasonable in convicting Appellant of first-degree wanton endangerment, given the evidence introduced at trial.

■ A person is guilty of first-degree wanton endangerment if, "under circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person." KRS 508.060(1). With respect to the first element, this Court has held that "whether wanton conduct demonstrates extreme in-

difference to human life is a question to be decided by the trier of fact." *Brown v. Commonwealth*, 975 S.W.2d 922, 924 (Ky. 1998).

In this case, the jury's verdict was not clearly unreasonable. The jury concluded that the Appellant's conduct, which included driving late at night, sometimes down the middle of the road, at perhaps triple the speed limit, created a substantial danger of death or serious physical injury to his passenger. Finding such a danger seems quite reasonable given this evidence. In fact, Appellant nearly caused two high-speed, head-on collisions, and he barely avoided crashing into a tree and telephone pole. Although Appellant avoided getting into a catastrophic accident, the evidence supports that he repeatedly foisted the risk of catastrophic injury onto his passenger.

Moreover, the jury was not unreasonable to conclude that Appellant's driving showed extreme indifference to the life of his passenger. This determination is a question to be decided by the jury, and the above evidence is certainly enough to place the issue before them. Consequently, Appellant was not entitled to a directed verdict of acquittal on this charge.

### B.  Evidence of the Passenger's Age

#### 1.  Background Evidence

■ The Commonwealth may introduce background evidence regarding victims because such evidence is relevant to understanding the nature of the crime. *Ernst v. Commonwealth*, 160 S.W.3d 744, 763 (Ky.2005). Such evidence is not unduly prejudicial to a defendant unless the victim is "glorified or enlarged," *id.* (quoting *Bowling v. Commonwealth*, 942 S.W.2d 293, 302–03 (Ky.1997)), or unless the evidence is "generally intended to arouse sympathy" for the victims or their families,

*id.* (quoting *Bennett v. Commonwealth,* 978 S.W.2d 322, 325–26 (Ky.1998)).

■ This Court has approved the introduction of victim background evidence such as the victim's age, job, interests, and level of education. *Sherley v. Commonwealth,* 889 S.W.2d 794, 799 (Ky.1994) (Commonwealth told jury in opening statement that victim was eighty-one-years-old); *Campbell v. Commonwealth,* 788 S.W.2d 260, 263 (Ky.1990) (victim's friend testified that victim was a teacher and frequently exercised); *McQueen v. Commonwealth,* 669 S.W.2d 519, 523 (Ky.1984) (victim's father testified that victim had completed college and wanted to obtain a Master's Degree). Introducing such evidence is not reversible error because it simply "bring[s] to the attention of the jury that the victim was a living person, more than just a nameless void." *McQueen,* 669 S.W.2d at 523.

In this case, the judge properly allowed testimony of the victim's age. Such testimony is admissible as victim background evidence. The record does not suggest that the victim's age was unduly emphasized. Rather, the record shows only that the witnesses and Commonwealth briefly described her by referring to her age. These few descriptions do not amount to making the victim "glorified or enlarged," and no evidence supports that they were "generally intended to arouse sympathy" for her. *Cf. Ernst,* 160 S.W.3d at 763.

Describing the victim as a juvenile or as a high school student is no worse than describing the victim as an eighty-one-year-old woman, which this Court has previously approved. *Sherley,* 889 S.W.2d at 799. These descriptions seem to be mere offhand comments that show the victim is more than just a nameless void, as in *McQueen,* 669 S.W.2d at 523. Consequently, allowing the jury to hear these descriptions was not reversible error.

### 2. Jury Instructions

■ More concerning is that the judge specified in his second-degree wanton endangerment instruction that the victim was a high school student. Such evidence is relevant only as victim background evidence, and not otherwise. Placing this fact in the jury instructions, however, implies the age of the victim may be a relevant consideration to Appellant's guilt. This suggestion arguably violated the judge's duty to instruct a jury in "such a manner that they may not be misled," *Webb v. Adams,* 302 Ky. 335, 339, 194 S.W.2d 515, 517 (1946).

Nevertheless, this issue is not properly preserved for appeal. A party may not complain on appeal that an instruction was defective unless that party objected to its defect at trial or offered at trial an alternative instruction without the defect. CR 51(3); *Burke Enterprises, Inc. v. Mitchell,* 700 S.W.2d 789, 792 (Ky.1985). The record shows that Appellant did not object to the judge's instruction and did not offer an alternative one. Accordingly, this Court will scrutinize the instruction only for palpable error. RCr 10.26.

This Court finds that the error, if any, was not palpable as no "manifest injustice has resulted." *Id.* The jury already knew that Appellant's passenger was a high school student, and regardless, Appellant was convicted of wantonly endangering her under an instruction that did not refer to her age. Thus, this is not reversible error.

### C. Double Jeopardy

■ "No person shall, for the same offense, be twice put in jeopardy of his life or limb...." Ky. Const. § 13; *accord* U.S. Const. amend. V. Under Kentucky law, the test for whether a person has been put twice in jeopardy for the same offense is

the same as was stated in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *See Dixon v. Commonwealth,* 263 S.W.3d 583, 588–89 (Ky. 2008) (recounting that although this state once departed from the *Blockburger* test, it now relies on it to resolve double jeopardy claims); *Beaty v. Commonwealth,* 125 S.W.3d 196, 210 (Ky.2003) (finding that KRS 505.020 codified the *Blockburger* test). In *Blockburger,* the U.S. Supreme Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger,* 284 U.S. at 304, 52 S.Ct. 180.

Accordingly, resolving Appellant's double jeopardy claim requires comparing the provisions under which he was convicted. First, this Court will compare the provisions for Appellant's first-degree fleeing or evading police and his second-degree wanton endangerment convictions. Then this Court will do the same with his first-degree fleeing or evading police and first-degree wanton endangerment convictions.[1]

### 1. Second–Degree Wanton Endangerment Conviction

The provision under which Appellant was convicted of first-degree fleeing or evading police requires:

> while operating a motor vehicle with intent to elude or flee, the person knowingly or wantonly disobeys a direction to stop his or her motor vehicle, given by a person recognized to be a police officer, and ... [b]y fleeing or eluding, the person is the cause, or creates a substantial

risk, of serious physical injury or death to any person or property....

KRS 520.095(1). The provision under which Appellant was convicted of second-degree wanton endangerment requires: "wantonly engag[ing] in conduct which creates a substantial danger of physical injury to another person." KRS 508.070(1).

First-degree fleeing or evading police contains proof of four facts that second-degree wanton endangerment does not. Specifically, first-degree fleeing or evading police requires proof that the accused was operating a motor vehicle, had intent to elude or flee, disobeyed a police officer's direction to stop, and that the risk of physical injury was serious. Second-degree wanton endangerment requires proof of none of these facts.

Second-degree wanton endangerment, however, requires proof of no fact beyond first-degree fleeing or evading police. Both provisions are satisfied by proof of wantonly engaging in certain conduct which creates a substantial danger of serious physical injury to another person. For second-degree wanton endangerment, the conduct is general and open-ended; for first-degree fleeing or evading police, the conduct is specified as intentionally fleeing from police while operating a motor vehicle. It follows, therefore, that once the Commonwealth proved the specific conduct required to convict Appellant of first-degree fleeing or evading police, it necessarily proved the general conduct necessary to convict him of second-degree wanton endangerment, too.

Consequently, Appellant's convictions for first-degree fleeing or evading police and second-degree wanton endangerment constitute double jeopardy. Given that

---

1. Appellant's brief on this issue is confused. His heading refers to first-degree wanton endangerment, but the body of that section seems to discuss only second-degree wanton endangerment. This Court will discuss both.

first-degree fleeing or evading police is a felony and that second-degree wanton endangerment is a misdemeanor, the remedy is to vacate the lesser offenses of wanton endangerment. *Clark v. Commonwealth,* 267 S.W.3d 668, 678 (Ky.2008). This is because the principle of double jeopardy prohibits the Commonwealth from "punish[ing] a single episode as multiple offenses," not from "carv[ing] out of a single criminal episode the most serious offense." *Id.* (quoting *Commonwealth v. Burge,* 947 S.W.2d 805, 811 (Ky.1996)). Given that Appellant's second-degree wanton endangerment convictions would result in concurrently running sentences of 365 days, KRS 532.110, and that his first-degree fleeing or evading police conviction would run for two years, the more serious conviction is for the latter. It is therefore that conviction which stands. *Id.* Hence, Appellant's two convictions for second-degree wanton endangerment are hereby reversed and vacated.

### 2. First–Degree Wanton Endangerment

█ The principal difference between first-degree and second-degree wanton endangerment is that the first-degree requires the additional element of "circumstances manifesting extreme indifference to the value of human life." KRS 508.060(1). This element is not present in first-degree fleeing or evading police. The only other difference is that the first degree requires the risk of injury to another person to be a "substantial danger of death or serious physical injury" rather than only a "substantial danger of physical injury." *Compare id. with* KRS 508.070. Therefore, as with first-degree wanton endangerment, the three elements of operating a motor vehicle, having intent to elude or flee, and disobeying a police officer's direction to stop are required of the fleeing or evading police charge but not of the wanton endangerment charge. Consequently, each provision requires proof of a fact that the other does not. Thus, Appellant's convictions for first-degree fleeing or evading police and first-degree wanton endangerment do not constitute double jeopardy.

### D. Biased Tribunal

█ "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955). Hence, to satisfy due process, the judge must be impartial. *Id.* Opinions that a judge forms during a trial do not show a lack of impartiality unless they show "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); *Bowling v. Commonwealth,* 168 S.W.3d 2, 12 (Ky.2004). For example, this Court has held that a judge's "mere comment to several jurors that they had done the right thing" in their sentencing recommendation did not show that a fair sentencing was impossible, and that, consequently, the defendant was not denied due process. *Bowling,* 168 S.W.3d at 12; *see also United States v. Battle,* 235 F.Supp.2d 1301, 1348 (N.D.Ga.2001).

In this case, Appellant was not denied a fair trial in a fair tribunal. The evidence of bias is no greater in this case than it was in *Bowling:* the judge merely expressed approval of the jury's findings and recommendation. The judge told the jury that he "would have found exactly the same as [they] found" and that Appellant's misdemeanor conviction was "[c]ertainly worth" the sentence the jury recommended. As in *Bowling,* this does not show that a fair sentencing was impossible. *Cf. Bowling,* 168 S.W.3d at 12.

Indeed, the judge expressed skepticism about the jury's other findings, stating that he was "not sure I'd have found him guilty in regard to a felony ... given the circumstances and evidence." The record thus shows nothing more than the judge's candid remarks that he agreed with some of the jury's findings and that he might not have decided the same on some others. His comments that the jury had made the right decision with its sentencing recommendation was "unwise, but not reflective of personal bias" against Appellant. *Battle*, 235 F.Supp.2d at 1348. Accordingly, Appellant was not denied due process.

### III. Conclusion

Appellant's two convictions for second-degree wanton endangerment are reversed and vacated. All others are affirmed.

All sitting. All concur.