# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

# $\mathfrak{Supreme\ Court\ of\ Kentucky}$

FINAL

2017-SC-000334-MR

DATE 3/7/19 Kim Redmon, DC

TAIRA LITSEY                                                 APPELLANT

                  ON APPEAL FROM BULLITT CIRCUIT COURT

V.                       HONORABLE RODNEY D. BURRESS, JUDGE
                               NO. 16-CR-00456

COMMONWEALTH OF KENTUCKY                              APPELLEE

## MEMORANDUM OPINION OF THE COURT

## <u>AFFIRMING</u>

Taira Litsey was indicted on multiple charges stemming from a routine traffic stop that escalated into her fleeing from the police and severely injuring an officer in the process. Litsey waived her right to a jury trial and at the close of the proof, the trial court found Litsey guilty of first-degree assault, first-degree wanton endangerment, fleeing police, operating a vehicle without a valid license, and being a second-degree persistent felony offender (PFO II). As a result of the PFO II enhancement, the trial court sentenced Litsey to forty years.

On appeal, Litsey argues that: (1) the trial court erred by denying Litsey's motion for a directed verdict on first-degree assault and first-degree wanton endangerment, and (2) the trial court committed palpable error in finding that

Litsey is a PFO II because the Commonwealth failed to prove she was eighteen or older at the time the previous felony was committed. Finding no error, we affirm the trial court.

## FACTS AND PROCEDURAL HISTORY

While on regular patrol on July 3, 2016, Officer Besednjak ran the license plate of the vehicle traveling in front of him. His search revealed that the vehicle was registered to Taira Litsey, whose driver's license was suspended. Officer Besednjak initiated his emergency lights and Litsey pulled into a gas station. Officer Besednjak alerted dispatch that he was making a traffic stop. After stopping his vehicle behind Litsey, Officer Besednjak approached the vehicle and asked Litsey for her identification and proof of insurance, but she had none. Shortly thereafter, two additional officers arrived on the scene. One of the other officers asked Litsey for her keys and when she complied, he placed the keys on the roof of Litsey's vehicle. After returning to his vehicle and performing a quick search, Officer Besednjak learned that Litsey had outstanding felony arrest warrants.

Officer Besednjak informed the other officers about the outstanding warrants, then walked back over to Litsey and asked her to step out of the vehicle. She claimed she needed to roll her windows up as she grabbed the keys from the roof. Despite Officer Besednjak repeatedly telling her to stop and exit her vehicle, she persisted. He reached in the vehicle attempting to get the keys from her, but she was able to get the keys in the ignition and start the vehicle. According to Officer Besednjak, the top half of his body was inside the

2

vehicle, reaching across her lap trying to get the keys. Despite the officer being partially in her vehicle, Litsey took off at a high rate of speed, causing her tires to squeal. Officer Besednjak was initially dragged with the vehicle until he fell out and struck his upper back on a curb. He later testified that Litsey also ran over his left calf as she fled.

Officer Besednjak got up and went back to his vehicle while yelling at the other officers to pursue Litsey. He activated his lights and siren as he began the pursuit, with dark and rainy conditions making it very difficult to see her vehicle. The officers lost sight of Litsey's vehicle, and therefore were not able to catch her. Litsey and her passenger, Logan Lamb, drove at high speed for a few minutes before pulling over behind a building. At some point, Litsey turned her lights off. Once she stopped the vehicle, she ran away on foot.

That night, Officer Besednjak began a long process of medical treatment for his injuries. At trial, his neurosurgeon testified that he suffered a herniated cervical disc, which was surgically removed. Additionally, Officer Besednjak testified that he continues to suffer significant pain and muscle weakness and must take medication day and night to deal with his pain. He spends most of his days on the couch to avoid putting pressure on his neck and has no plans to return to work as a police officer. He also testified that he was currently in the process of applying for retirement disability benefits and it is unlikely that he can return to full-duty work.

Lamb, Litsey's passenger during the incident, testified for the defense. Lamb stated that he had known Litsey for about three months prior to the

event and their relationship centered around drug use. They were together every day and most every night during that time period and slept very little. Lamb testified that Litsey used drugs multiple times a day and that they had both been awake for approximately three weeks straight at the time of the incident.

According to Lamb, while fleeing from the police, Litsey stated she was scared and did not want to go to jail. Litsey admitted that when she was stopped by Officer Besednjak she knew she had outstanding arrest warrants. Lamb estimated that she was driving approximately eighty miles per hour when she fled from police, but Litsey denied driving that fast. Lamb was scared and asked her to stop the vehicle.

Litsey was arrested in Jefferson County on July 5, 2016. Litsey pled not guilty to the charges and waived her right to a jury trial. The bench trial began on April 18, 2017. After a two-day trial, the trial court found Litsey guilty of first-degree assault, first-degree wanton endangerment, fleeing police, operating a vehicle without a valid license, and being a PFO in the second degree (PFO II). The trial court sentenced Litsey to fifteen years for assault, one year for wanton endangerment, five years for fleeing and evading, and ninety days for driving with a suspended license, all to run concurrently. The PFO II finding enhanced Litsey's sentence for the assault charge, making her total sentence forty years.

4

## ANALYSIS

**I.   The trial court did not err in denying Litsey's motions for directed verdict on the wanton endangerment and assault charges.**

Litsey challenges the sufficiency of the evidence to support the wanton endangerment and assault convictions. This issue is preserved by trial counsel's motion for a directed verdict at the close of the Commonwealth's proof on the two charges, and renewal of the motion at the end of all evidence.[1]

A trial court's ruling on a motion for directed verdict is reviewed using the standard set forth in *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky. 1991):

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth

---

[1] In the trial court, Litsey moved for a directed verdict. However, since this was a bench trial, the trial court should have treated Litsey's motion as a motion to dismiss under CR 41.02(2), which states:

> In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

Under this rule, "[t]he trial court 'must weigh and evaluate the evidence' rather than, with regard to directed verdict, 'indulge every inference in the [Commonwealth's] favor.'" *R.S. v. Commonwealth,* 423 S.W.3d 178, 184 (Ky. 2014) (quoting *Morrison v. Trailmobile Trailers, Inc.,* 526 S.W.2d 822, 824 (Ky. 1975)). A trial court's ruling under CR 41.02(2) is reviewed for an abuse of discretion. *Id.* (citing *Jaroszewski v. Flege,* 297 S.W.3d 24, 31 (Ky. 2009)). Although Litsey used the wrong procedural method in both the trial court and her argument before this Court, it has no bearing on our holding in this case. Given the evidence against Litsey, we find no error.

> is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.
>
> On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

In reviewing the evidence as a whole, we cannot say that it was "clearly unreasonable" for the trial court, as fact-finder in this bench trial, to find guilt on either charge and therefore Litsey was not entitled to a directed verdict. For clarity, the wanton endangerment and first-degree assault charges will be discussed separately.

## A. Litsey was not entitled to a directed verdict on the wanton endangerment charge.

Under Kentucky Revised Statute (KRS) 508.060(1), "[a] person is guilty of wanton endangerment in the first degree when, under circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person."

> A person acts wantonly . . . when [she] is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

KRS 501.020(3).

Litsey was convicted of first-degree wanton endangerment in relation to her actions against the passenger in her vehicle, Logan Lamb. On appeal, she contests the sufficiency of the evidence supporting this conviction. Specifically,

6

Litsey argues that her actions differ dramatically from the actions of other drivers in cases where this Court has found wanton endangerment in the first degree.[2] However, "in ruling on a motion for directed verdict, the test is not how Appellant's behavior compares with previous defendants, but whether a jury could reasonably conclude, viewing the evidence in the light most favorable to the State, that Appellant was driving so wantonly as to manifest extreme indifference to human life." *Ramsey*, 157 S.W.3d at 197. Litsey's comparison of her actions to other cases where this Court has found wanton endangerment is misplaced. Further, "whether wanton conduct demonstrates extreme indifference to human life is a question to be decided by the trier of fact." *Brown*, 297 S.W.3d at 560. Here, the trial court was tasked with determining whether Litsey wantonly endangered Lamb through her actions.

In considering the statutory elements above and viewing the evidence in a light most favorable to the Commonwealth, it was not clearly unreasonable for the trial court to find that Litsey wantonly endangered Lamb. Both Lamb and the officers testified that it was dark outside and raining heavily while Litsey fled from police. According to Lamb, and admitted by Litsey herself, she

---

[2]Litsey compares her case to (1) *Hurt v. Commonwealth*, where this Court found that the defendant's act of pursuing, ramming and forcing another vehicle off an embankment constituted a substantial risk of death to the passengers in the other vehicles. 409 S.W.3d 327 (Ky. 2013); (2) *Brown v. Commonwealth*, where this Court found that the defendant's attempts to evade police by driving down the center of the road, causing other vehicles to swerve to avoid collisions, was sufficient for a finding of first-degree wanton endangerment. 297 S.W.3d 557 (Ky. 2009); and (3) *Ramsey v. Commonwealth*, where this Court found that the defendant committed first-degree wanton endangerment by operating his vehicle while intoxicated with a ten-year old as his passenger. 157 S.W.3d 194 (Ky. 2005).

7

was high on drugs at the time of the incident and had not slept for at least three weeks prior. Despite Officer Besednjak's orders to stop and him being partially inside the vehicle, Litsey took off so fast that the tires squealed. Although there were contradictory estimates as to how fast Litsey was driving, Lamb stated that 80 miles per hour was a fair estimate. There was also contradicting testimony as to whether the vehicle's lights were on, with Officer Besednjak stating that the vehicle's lights were not on and Litsey and Lamb stating the lights were on. In any event, Litsey drove fast enough to evade police that night.

Litsey also argues that Lamb never expressed any fear that his life was threatened by her actions, and never demanded that she stop so he could escape from what he perceived as a life-threatening situation. However, he testified that he was scared because they were "running from the law." Further, Litsey testified that Lamb was yelling at her to stop the vehicle. Both Lamb and Litsey testified that he asked her, even yelled at her, to stop the vehicle.

We will reverse a trial court's denial of a motion for directed verdict "if under the evidence as a whole, it would be *clearly unreasonable* for a jury to find guilt[.]" *Benham,* 816 S.W.2d at 187 (emphasis added). On a motion for directed verdict, the trial court is required to presume the Commonwealth's proof is true and draw all reasonable inferences in favor of the Commonwealth. In doing so, it was not unreasonable for the trial court to deny the motion for directed verdict as to the wanton endangerment charge. Litsey stated that she

8

just wanted to get away from the police. She knew she had outstanding warrants and knew the danger of the situation, but regardless she did not want to go to jail. Litsey created circumstances that posed a risk of serious physical injury or death not only to herself, but to Lamb as well. Her efforts in eluding the police reflected a conscious disregard of those risks.

Litsey's conduct of fleeing from law enforcement at high speeds, in the dark, in the pouring rain, while sleep-deprived and under the influence of drugs constitutes wanton conduct. While some of Litsey's testimony contradicts the Commonwealth's, this does not mean the trial court's denial of a directed verdict was in error. The trial court was tasked with looking at all the evidence in a light most favorable to the Commonwealth. "It should be remembered that the trial court is certainly authorized to direct a verdict for the defendant if the prosecution produces no more than a mere scintilla of evidence. Obviously, there must be evidence of substance." *Commonwealth v. Sawhill*, 660 S.W.2d 3, 5 (Ky. 1983). Here the Commonwealth presented evidence of substance to support the wanton endangerment charge, and the trial court properly denied Litsey's motion for a directed verdict.

### B. Litsey was not entitled to a directed verdict on the first-degree assault charge.

At the close of the Commonwealth's proof, Litsey moved for a directed verdict on the first-degree assault charge based on a lack of proof of the requisite state of mind. The trial court denied the motion and ultimately found Litsey guilty on the charge. A person is guilty of assault in the first-degree when "[u]nder circumstances manifesting extreme indifference to the value of

9

human life [she] wantonly engages in conduct which creates a grave risk of death to another and thereby causes serious physical injury to another person." KRS 508.010(1)(b).

On appeal, Litsey specifically argues that insufficient evidence existed to show that she was aware that restarting her vehicle and driving out of the gas station constituted a substantial and unjustifiable risk to Officer Besednjak. She claims that had she been aware that he was thrusting his body into her vehicle, her subsequent actions would establish the necessary wanton conduct on her part. However, she states that all of the testimony, as well as the video evidence, establish that Litsey was not aware of the danger her actions posed to Officer Besednjak. We disagree.

The testimony at trial contradicts her argument. Litsey herself admitted that Officer Besednjak grabbed her hand, but she already had the keys in the ignition. In order for the officer to have his hand on the keys while she had the keys in the ignition, part of his body had to be in the vehicle. On cross-examination, she admitted that the officer's arm was inside her vehicle when she took off, although she did not recall where his head was located at the time. She knew he wanted her to get out of the vehicle, but she just wanted to get away from him. She admitted that she was not thinking about the potential danger of the situation. Further, Lamb testified that Officer Besednjak was trying to get the keys from Litsey and at the time she took off, the officer's hands were near the ignition switch of the vehicle. This further

indicates that a significant portion of the officer's body was in the vehicle when Litsey fled.

The Commonwealth also introduced footage from the body camera Officer Besednjak wore during the incident. The footage shows that Litsey ignored Officer Besednjak's repeated instructions to get out of the vehicle. Litsey instead proceeded to retrieve the keys from the roof of her vehicle and start the vehicle. The footage shows that Officer Besednjak was partially inside her vehicle to prevent her from fleeing when she took off at a high rate of speed. A reasonable person would recognize that driving away while someone is partially inside her vehicle creates a substantial danger of serious physical injury or death. Further, Litsey's admission that the officer grabbed her hand while she had the keys in the ignition shows that she consciously disregarded any risk of danger to Officer Besednjak, satisfying the wanton requirement under KRS 508.010(1)(b).

To reiterate the standard for a directed verdict, the court must presume the Commonwealth's proof is true and draw all reasonable inferences in favor of the Commonwealth. *Benham*, 816 S.W.2d at 187-88. In order to find that the trial court erred, this Court must determine that it was clearly unreasonable for the fact-finder to find guilt on the first-degree assault charge. *Id.* A motion for directed verdict is "reviewed in light of the proof at trial and the statutory elements of the alleged offense." *Acosta v. Commonwealth*, 391 S.W.3d 809, 816 (Ky. 2013).

11

The Commonwealth presented sufficient evidence to support a reasonable belief that Litsey's conduct constituted an extreme indifference to the value of human life, created a grave risk of death, and caused serious physical injury to Officer Besednjak. "[W]hether wanton conduct demonstrates extreme indifference to human life is a question to be decided by the trier of fact." *Brown*, 297 S.W.3d at 560. Litsey disregarded the officer's orders and acted dangerously to avoid arrest. While she did escape from police for a short time, her actions resulted in serious physical injury to the officer who now has little to no prospects of returning to his duties as a police officer. Because of Litsey's actions, Officer Besednjak endured significant physical pain, multiple doctors' visits, and surgery, thus satisfying the "serious physical injury" requirement of first-degree assault.

Through the testimony of several officers, Litsey, and Lamb, the trial court found "more than a scintilla" of evidence to support the first-degree assault charge, and thereby correctly denied the motion for directed verdict. *Acosta*, 391 S.W.3d at 816. The testimony at trial satisfied the Commonwealth's burden for overcoming a directed verdict on the first-degree assault charge. Although Litsey presented some contradictory testimony, the trial court was tasked with reviewing all evidence in a light most favorable to the Commonwealth. Given the evidence presented to the trial court, Litsey's motion for directed verdict was properly denied.

12

## II. There was sufficient evidence to support Litsey's conviction as a persistent felony offender.

In the indictment, Litsey was charged with being a persistent felony offender in the first degree (PFO I). During trial, the Commonwealth amended the first-degree PFO charge down to a second-degree PFO charge, and the trial judge ultimately found Litsey to be a PFO II. Litsey argues that there was insufficient proof to support the PFO II conviction because no evidence established that she was over eighteen when she committed her previous felony.

This issue is not preserved and will therefore be reviewed under the palpable error standard. Kentucky Rule of Criminal Procedure (RCr) 10.26 states that an unpreserved error may be considered on appeal only if the error is palpable and "affects the substantial rights of a party." A trial court will be reversed for palpable error when "manifest injustice has resulted from the error." *Elery v. Commonwealth*, 368 S.W.3d 78, 98 (Ky. 2012). This Court has explained that manifest injustice has resulted if the error "so seriously affected the fairness, integrity, or public reputation of the proceeding as to be shocking or jurisprudentially intolerable." *Miller v. Commonwealth*, 283 S.W.3d 690, 695 (Ky. 2009) (citations omitted). "[A] palpable error affects the substantial rights of a party only if it is more likely than ordinary error to have affected the judgment." *Kiper v. Commonwealth*, 399 S.W.3d 736, 747 (Ky. 2012) (citations omitted).

In order to establish that Litsey was eligible for sentencing enhancements provided by the PFO II statute, the Commonwealth was required to prove: (1)

13

that Litsey was more than 21 years old; (2) that she stood convicted of a new felony offense; (3) that she was previously convicted of another felony offense which she was sentenced to a term of imprisonment of at least one year; (4) that she was over eighteen years old when she committed the prior felony offense; and (5) that she completed service of the sentence imposed for the previous felony conviction within five years prior to the commission of the felony for which she now stands convicted.[3]  KRS 532.080.

During the sentencing phase, the Commonwealth called two officers to testify in support of the PFO II charge.  The first officer testified that Litsey's birthdate is October 16, 1984.  The second officer testified about a record search he performed on Litsey and her four previous convictions from Jefferson and Warren Counties.  Litsey's convictions in Warren County resulted in an eight-year sentence, ordered to run consecutively with her previous five-year sentence in the Jefferson County cases, for a total sentence of thirteen years.  Her sentence began on March 24, 2005, with a serve out date on January 30, 2014.  The trial court focused on Litsey's felony convictions in the Warren County cases, involving third-degree assault and bail jumping, for purposes of the PFO 2 conviction.

---

[3] KRS 532.080(c) provides five different grounds in order to satisfy this prong of being a persistent felony offender in the second degree.  Completing service of the sentence imposed for the previous felony conviction within five years prior to the commission of the felony for which she now stands convicted is the prong that the Commonwealth chose to use in seeking the PFO II enhancement.

14

Litsey argues that the Commonwealth did not prove that she was eighteen at the time she committed the previous felonies. The officer who testified about the record search he performed gave the conviction dates for the crimes but did not give the dates the prior offenses were committed. Litsey is correct in her assertion that to be a PFO II, the offender must have been eighteen or older when the previous felony was committed. KRS 532.080(2)(b). However, the Commonwealth introduced certified court records from the Warren County cases, and those records included the citations, which show that the offenses were committed in 2006 and 2007. The Commonwealth may introduce indirect evidence of a defendant's age at the time she committed the prior offenses "so long as the indirect evidence is sufficient to create a reasonable inference that the offender was eighteen at the time [she] committed the underlying offense." *Moody v. Commonwealth*, 170 S.W.3d 393, 397 (Ky. 2005). We have deemed it acceptable to use simple subtraction to calculate an offender's age at the time she committed the offense. *Maxie v. Commonwealth*, 82 S.W.3d 860, 864 (Ky. 2002). With a birth year of 1984, it is clear that Litsey was over the age of eighteen in 2006 and 2007.

The Commonwealth met all five outlined requirements for proving Litsey's status as a PFO II. Simple subtraction proves that she was over 21 years old when convicted of the felonies in the present case, and wanton endangerment, first-degree assault, and fleeing and evading police are all felonies under Kentucky law. Litsey's previous felony convictions resulted in a thirteen-year sentence, which is well over the one-year sentence required under

15

the PFO II statute. The dates of the offenses contained in the certified Warren County records, and made a part of the record before the trial court, prove that Litsey was at least eighteen years old at the time she committed the previous felonies. Finally, her serve out date for the previous sentence was January 30, 2014, which means she completed her prior felony sentence within five years prior to when the present felonies were committed on July 3, 2016. Therefore, all required elements of KRS 532.080(2) were satisfied and there was no palpable error in the court determining Litsey is a PFO II.

## CONCLUSION

For the foregoing reasons, we affirm the conviction and sentence of the Bullitt Circuit Court.

C.J. Minton; Hughes, Keller, Lambert, VanMeter, and Wright, JJ., sitting. All concur.


COUNSEL FOR APPELLANT:

Joseph R. Eggert
Mark Wettle


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Jeffrey Allan Cross
Assistant Attorney General

16