RENDERED: MARCH 26, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1503-MR

BRIAN BALDWIN                                    APPELLANT

                   APPEAL FROM TAYLOR CIRCUIT COURT
v.              HONORABLE SAMUEL T. SPALDING, JUDGE
                   ACTION NO. 19-CR-00092

COMMONWEALTH OF KENTUCKY                   APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: JONES, LAMBERT, AND K. THOMPSON, JUDGES.

JONES, JUDGE: Brian Baldwin appeals from the Taylor Circuit Court's judgment and sentence of fifteen years' imprisonment following his jury trial. Baldwin was convicted on charges of first-degree fleeing or evading police, resisting arrest, operating a motor vehicle on a suspended license, five counts of first-degree wanton endangerment, and being a first-degree persistent felony offender. We affirm the trial court's judgment and sentence.

# I. BACKGROUND

The events of this case began in the late evening to early morning hours of February 27 and 28, 2019, when Campbellsville police were searching for Baldwin in order to execute a warrant. At about midnight, Officer Joshua Morgan spotted a Ford Fusion sedan outside a local diner which resembled the one driven by Baldwin. Because the Fusion was backed into its parking spot, Officer Morgan could not readily see the license plate to verify ownership of the vehicle. As Officer Morgan approached the vehicle to examine the license plate, he saw Baldwin leave the diner and get into the Fusion. Baldwin then proceeded to drive a short distance on Kentucky Route 210 before turning in at a gas station. When he saw Officer Morgan pull in behind him, Baldwin accelerated away from the area.

This encounter initiated a high-speed pursuit that would involve several Campbellsville police officers and Kentucky State Police (KSP) troopers chasing after Baldwin in what the Commonwealth would later describe as "a fifty-six-mile chase over forty-five minutes in three counties." Baldwin drove erratically; he weaved in and out of the oncoming lane of traffic, turned the lights of the Fusion off and on, and periodically reached speeds of about 120 miles per hour in his attempt to evade police. Officer Morgan and Officer Elliott Taylor would later testify about how they believed their lives were endangered when they

pursued Baldwin at high speeds through roads with very sharp curves in Taylor County. Additionally, KSP Trooper Dexter Colvin would later testify how he believed his life was endangered when Baldwin's vehicle raced past his parked cruiser at high speeds without its headlights on.

The chase came to its conclusion after KSP successfully used spike strips on the roadway to flatten one of Baldwin's tires. This slowed Baldwin's vehicle enough for KSP Sergeant Jamie Richard to execute a "PIT maneuver,"[1] which stopped the vehicle. When the law enforcement officers exited their cruisers and approached to remove Baldwin from the Fusion, the vehicle's front wheel began to spin. The vehicle moved slightly, bumping into Sergeant Richard. At this point, Sergeant Richard fired his Taser and struck Baldwin in the face. The vehicle stopped moving, and the officers placed Baldwin under arrest.

The Taylor County Grand Jury indicted Baldwin on twenty-seven counts as a result of this incident: thirteen counts of first-degree wanton endangerment,[2] first-degree fleeing or evading police,[3] criminal littering,[4] resisting

---

[1] A "PIT maneuver" (precision immobilization technique) is performed by trained law enforcement officers and involves deliberately bumping the side rear panel of a moving vehicle with the nose of a pursuing cruiser. When correctly executed, this causes the vehicle to rotate and stop. The technique is potentially very dangerous; *see* Andrew Wolfson, *Kentucky police use tactic to stop fleeing drivers that has caused 30 deaths nationwide*, LOUISVILLE COURIER-JOURNAL (Feb.1, 2021), https://www.courier-journal.com/story/news/crime/2021/01/29/pit-stops-should-deadly-but-effective-police-maneuver-be-banned/4264936001/ (last accessed Feb. 14, 2021).

[2] Kentucky Revised Statute (KRS) 508.060, a Class D felony.

arrest,[5] operating a motor vehicle while under the influence of alcohol or drugs (DUI, second offense),[6] operating a motor vehicle on a suspended or revoked operator's license,[7] failure to illuminate head lamps, speeding (twenty-six miles or more over the speed limit),[8] six counts of disregarding a stop sign,[9] and being a first-degree persistent felony offender (PFO).[10] At Baldwin's trial, the jury heard testimony from multiple police officers and KSP troopers, including Officers Morgan and Taylor and Sergeant Richard. The jury also had the advantage of video evidence in this case; Baldwin recorded video while he was driving and posted it on his social media account.

Ultimately, the jury found Baldwin guilty of first-degree fleeing or evading police, resisting arrest, operating a motor vehicle on a suspended license, five counts of first-degree wanton endangerment, and being a first-degree persistent felony offender. The jury subsequently recommended that Baldwin's

---

[3] KRS 520.095, a Class D felony.

[4] KRS 512.070, a Class A misdemeanor.

[5] KRS 520.090, a Class A misdemeanor.

[6] KRS 189A.010.

[7] KRS 186.620(2).

[8] KRS 189.390.

[9] KRS 189.330.

[10] KRS 532.080.

sentence be fixed at three years for each felony conviction, served concurrently, and enhanced the term by virtue of the PFO to fifteen years' imprisonment. On September 10, 2019, the trial court entered its final judgment and sentence in accord with the jury's recommendation. This appeal followed.

## II. ANALYSIS

### A. Directed Verdict Motions

Baldwin presents two issues on appeal. First, he argues the trial court should have granted his motion for a directed verdict on three charges of first-degree wanton endangerment relating to Officers Morgan and Taylor and Trooper Colvin. "A person is guilty of first-degree wanton endangerment if, 'under circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person.'" *Brown v. Commonwealth*, 297 S.W.3d 557, 560 (Ky. 2009) (quoting KRS 508.060(1)). "[W]hether wanton conduct demonstrates extreme indifference to human life is a question to be decided by the trier of fact." *Id.* (quoting *Brown v. Commonwealth*, 975 S.W.2d 922, 924 (Ky. 1998)). An appellate court must consider the following in its review of a trial court's ruling on a directed verdict motion:

> When deciding a motion for a directed verdict "the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to

> believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). Questions about the credibility and weight to be given to the evidence are reserved to the jury. *Id.* "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Id.* (citing *Commonwealth v. Sawhill*, 660 S.W.2d 3 (Ky. 1983)).

*Lamb v. Commonwealth*, 510 S.W.3d 316, 325 (Ky. 2017). Furthermore, "[t]o defeat a directed verdict motion, the Commonwealth must only produce more than a mere scintilla of evidence." *Lackey v. Commonwealth*, 468 S.W.3d 348, 352 (Ky. 2015) (citation and internal quotation marks omitted).

Baldwin makes two different arguments in contending the trial court should have granted his motion for a directed verdict. For Officers Morgan and Taylor, the wanton endangerment charges were grounded in allegations that Baldwin drove his vehicle at such speeds that the officers were placed in substantial danger of death or serious physical injury by pursuing him. Baldwin contends the trial court erroneously denied his motion for a directed verdict because the officers' pursuit of him, with its attendant risks, was volitional. In short, Baldwin contends *he* did not place the officers in danger; the officers placed *themselves* in danger by electing to chase him.

The Kentucky Supreme Court answered the question of whether a criminal defendant may be held responsible for an officer's response to his actions

in *Robertson v. Commonwealth*, 82 S.W.3d 832 (Ky. 2002). In *Robertson*, the appellant was found guilty of second-degree manslaughter when a police officer who was chasing him on foot fell to his death in the Ohio River. *Id*. at 834-35. The *Robertson* Court held that "the fact that [the officer] vaulted over the concrete barrier of his own volition does not exonerate Appellant if [the officer's] act was either foreseen or foreseeable by Appellant as a reasonably probable result of his own unlawful act of resisting arrest by fleeing from apprehension." *Id*. at 836.

Baldwin argues *Robertson* is distinguishable because this was a vehicle pursuit, and the officers had a concomitant duty to drive safely along with their duty to enforce the law. Although we do not disagree with Baldwin that police pursuits are dangerous, and there is a genuine public policy question regarding when such pursuits are appropriate, the mere existence of the policy question does not immunize Baldwin against criminal responsibility for his own conduct. Using *Robertson* as a guide, Baldwin may be found criminally liable if the officers' responses to his unlawful conduct were foreseeable. It is unquestionably foreseeable that Baldwin's attempt to elude capture by speeding away in his vehicle would induce Officers Morgan and Taylor to pursue him.

Furthermore, following *Robertson*, the Kentucky Supreme Court considered the specific question of whether a criminal defendant in a vehicle pursuit may be charged with first-degree wanton endangerment for endangering

-7-

pursuing officers in *Culver v. Commonwealth*, 590 S.W.3d 810 (Ky. 2019). In *Culver*, the Supreme Court held "the question we ultimately consider is whether under the evidence as a whole, it was clearly unreasonable for a jury to find [appellant's] conduct caused or created a substantial risk of serious physical injury or death to the officers in pursuit." *Id*. at 817. The *Culver* Court ultimately concluded that the trial court did not err when it denied the appellant's motion for a directed verdict on the first-degree wanton endangerment charge. *Id*. at 818.

Here, the officers testified that they believed themselves in substantial danger when they were driving at high speeds after Baldwin at night on sharply curving roads. Their testimonies amount to "more than a mere scintilla," *Lackey*, 468 S.W.3d at 352, for the purpose of the directed verdict motion. Based on these considerations, we hold the trial court did not err in denying the directed verdict motion and allowing these charges of first-degree wanton endangerment to proceed to the jury.

Baldwin makes a different argument regarding the charge of first-degree wanton endangerment involving Trooper Colvin. He contends the shaking of Trooper Colvin's vehicle due to the speed of Baldwin's vehicle as it passed does not support a charge of wanton endangerment, arguing this is no different than the experience of someone stopping to change a tire on the side of the road. We disagree. Trooper Colvin testified he was surveying the area to determine whether

-8-

he should put down spike strips when Baldwin suddenly passed him at a high rate of speed with no headlights on. Trooper Colvin testified to his belief that he was in danger of death or serious injury due to Baldwin's conduct. With all reasonable inferences drawn in favor of the Commonwealth, *Benham*, 816 S.W.2d at 187, the trial court did not err in denying Baldwin's motion for a directed verdict on this count.

B. *Commonwealth's Closing Argument*

In Baldwin's second argument, he contends the Commonwealth committed two errors amounting to prosecutorial misconduct in its closing argument. First, Baldwin contends the Commonwealth improperly vouched for law enforcement during its closing argument, stating it believed Trooper Colvin to be "credible" and "candid." Similarly, Baldwin argues the Commonwealth's allusions to how "fine" the police force is and the "amazing" job they do asked the jury to "trust the Government's judgment rather than its own view of the evidence." Appellant's Brief at 20 (quoting *United States v. Young*, 470 U.S. 1, 18-19, 105 S. Ct. 1038, 1048, 84 L. Ed. 2d 1 (1985) (citation omitted)). Second, Baldwin contends the Commonwealth erred in its closing when it alluded to "five vehicles" Baldwin had passed on the roadway that night and stated Baldwin had placed the unknown individuals in those vehicles at risk. Baldwin argues these statements deprived him of the right to confront witnesses, or alternatively, that

these statements improperly permitted the Commonwealth to argue about facts which were not in evidence.

Baldwin admits his closing argument issues were not preserved. For unpreserved instances of prosecutorial misconduct, we reverse only if the misconduct was "flagrant so as to have render[ed] the trial fundamentally unfair." *Dickerson v. Commonwealth*, 485 S.W.3d 310, 329 (Ky. 2016) (citation and internal quotation marks omitted). We determine reversible flagrant misconduct through a four-part test: "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *Id.* (citations omitted). However, "[i]n the end, our review must center on the essential fairness of the trial as a whole, with reversal being justified only if the prosecutor's misconduct was so improper, prejudicial, and egregious as to have undermined the overall fairness of the proceedings." *Id.* (citations and internal quotation marks omitted).

We may immediately reject Baldwin's argument that the Commonwealth engaged in improper vouching. In closing arguments, "we have long recognized that it is permissible for prosecutors to comment on the veracity or credibility of witnesses." *Id.* at 332 (citing *Chumbler v. Commonwealth*, 905 S.W.2d 488, 503 (Ky. 1995) (citing *Cavins v. Commonwealth*, 272 S.W.2d 656

(Ky. 1954)).  The Commonwealth's opinions of law enforcement in this instance do not constitute misconduct, let alone flagrant error.  *Id*.  Next, in reviewing the record, we note the Commonwealth's "five vehicles" statement was a fleeting comment in a closing argument which lasted approximately thirty minutes.  Even if we accept that this statement was improper, the statement was isolated and could not have overly prejudiced the jury in view of the strength of the Commonwealth's evidence against Baldwin.  Viewed as a whole, Baldwin received a fair trial.  We discern no flagrant errors in the Commonwealth's closing argument which would require reversal.

### III.  CONCLUSION

For the foregoing reasons, we affirm the Taylor Circuit Court's judgment and sentence of conviction.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Travis Bewley
Assistant Public Advocate
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Leilani K. M. Martin
Assistant Attorney General
Frankfort, Kentucky